GREENFIELD SAVINGS BANK *vs.* CYRUS A. STOWELL & others.

Franklin.    Sept. 20, 1876. — Sept. 5, 1877.    COLT, MORTON & SOULE, JJ., absent.

The alteration of a promissory note by one of the makers, by increasing the amount for which it was made, by the insertion of words and figures in blank spaces left in the printed form on which it was written, avoids the note as to such makers as do not consent thereto, even in the hands of a *bonâ fide* holder for a valuable consideration.

CONTRACT against Cyrus A. Stowell, Timothy D. Richardson and Charles Stowell, upon the following promissory note, in which the words in Roman letters were printed, and those in italics written, and purporting to be signed by the defendants, and by George W. Bardwell, whose name appeared first among the signers :

"*$467.*                    Greenfield, Mass. *Sept. 29th*, *1874.*

" For value received,    *I*    promise to pay the Greenfield Savings Bank, or order, *four hundred and sixty-seven* dollars, on demand, with interest at the rate of *seven $\frac{3}{10}$* per centum per annum, payable semiannually on the first days of June and December of each year."

Cyrus A. Stowell and Richardson alone appeared, and filed several answers, each containing a general denial. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court on appeal, on agreed facts in substance as follows :

George W. Bardwell obtained from the plaintiff a printed blank form of a promissory note, such as the bank was accustomed to use. He then wrote in the figures " 67 " at the top of the note, leaving a space of three tenths of an inch between the mark " $ " and these figures, and also wrote in the words " sixty-seven " before the word " dollars " in the body of the note, leaving three inches of the blank space before the words " sixty-seven " unfilled; signed the note thus filled out, and presented it to the defendants, who, at his request and for his accommodation, signed the note as a note for sixty-seven dollars, and with no knowledge or expectation that the note was to be altered, given or negotiated for any other or larger sum, and without any authority to him to alter or increase the amount of the note.

Bardwell then, without the knowledge of the defendants, fraudulently wrote the figure " 4 " before the figures " 67 " at the top of the note, and " the words " four hundred and " " before the words " sixty-seven " in the body of the note; and on the note so altered, the plaintiff, without any notice of the alteration, lent to Bardwell the sum of $467. The note was then in the condition it now is, and there was no mark or indication of alteration.

If, as matter of law on the foregoing facts, the plaintiff was entitled to recover on the note, judgment was to be entered for the plaintiff ; otherwise for the two defendants who appeared.

*D. Aiken & C. C. Conant,* for the plaintiff.

*C. Delano & G. M. Stearns,* for the defendants.

GRAY, C. J. This action is brought upon a promissory note, signed by George W. Bardwell, Cyrus A. Stowell, Timothy D. Richardson and Charles Stowell, and appearing in its present condition, and alleged in the declaration, to be a note for $467. Cyrus A. Stowell and Timothy D. Richardson only defend the action.

It is agreed that the note is upon a blank printed form ; that, as originally prepared and signed by Bardwell, and signed by the

defendants at his request, it was a note for $67 ; and that Bardwell afterwards, without the authority or knowledge or expectation of the defendants, fraudulently prefixed the figure " 4 " to the figures " 67," and the words " four hundred and " to the words " sixty-seven," and in that form, and with no mark or indication of alteration, negotiated it to the plaintiff, who lent him $467 thereon.

The plaintiff contends that the defendants were negligent in signing the note with such blanks as enabled the fraudulent alterations to be made without danger of detection, and are therefore liable to an innocent holder for value upon the note as so altered. But after deliberate advisement, and careful examination of the authorites cited in the learned arguments at the bar, we are of opinion that this position cannot be maintained.

It is a general rule of our law, that a fraudulent and material alteration of a promissory note, without the consent of the party sought to be charged thereon, whether made before or after the delivery of the note, renders the contract wholly void as against him, even in the hands of one who takes it in good faith and without knowledge or reasonable notice of the alteration.   *Hall* v. *Fuller,* 5 B. & C. 750 ; *S. C.* 8 D. & R. 464.  *Warrington* v. *Early,* 2 El. & Bl. 763.  *Wood* v. *Steele,* 6 Wall. 80.  *Angle* v. *Northwestern Ins. Co.* 92 U. S. 330.  *Fay* v. *Smith,* 1 Allen, 477.  *Draper* v. *Wood,* 112 Mass. 315.  *Citizens' National Bank* v. *Richmond,* 121 Mass. 110.

If indeed a man indorses a blank form of note, and delivers it with the intention that the blank should be filled, he thereby makes the person to whom he delivers it his agent, and is responsible for whatever date, sum or time of payment he may insert, to a *bonâ fide* indorsee.  *Russel* v. *Langstaffe,* 2 Doug. 514.  *Violett* v. *Patton,* 5 Cranch, 142.  So, if he delivers the note with the date or sum in blank, he is held to authorize the blank to be filled up with any date or sum.  *Bank of Pittsburgh* v. *Neal,* 22 How. 96.  *Androscoggin Bank* v. *Kimball,* 10 Cush. 373.  *Abbott* v. *Rose,* 62 Maine, 194.

In an early case in this court, partners, one of whom had left their blank indorsements with their clerk for use in their business, were held liable to a *bonâ fide* holder upon one of such indorsements which had been obtained from the clerk by fraud

and Chief Justice Parsons said, that the objection that the note ought to be considered as a forgery of the names of the indorsers " would have great weight, if, when the indorsers put the name of the firm on the paper, they had not intended that something should afterwards be written, to which the name should apply as an indorsement; for then the paper would have been delivered over unaccompanied by any trust or confidence; " but that the court " must consider a delivery by the clerk, who was entrusted with a power of using these indorsements, (although his discretion was confined,) as a delivery by one of the house; whether he was deceived, as in the present case, or had voluntarily exceeded his direction; for the limitation imposed on his discretion was not known to any but to himself and to his principals." *Putnam* v. *Sullivan*, 4 Mass. 45, 53, 54.

The principal authorities in support of the plaintiff's position are in those countries whose jurisprudence is immediately derived from the civil law. Pothier was of opinion that if the mistake of a banker, in paying a bill for too large a sum, was induced by the fault of the drawer, in not taking care to write the bill in such a manner as to prevent fraudulent alteration, as, for instance, if he wrote the sum in figures to which a cipher was afterwards added, the drawer should in such case be held to indemnify the banker for what he had lost by the fraudulent alteration which the drawer by his own fault had afforded opportunity to make. Pothier Contrat de Change, pt. 1, *c.* 4, § 99. Similar views have been taken by courts in Scotland and in Louisiana in cases of promissory notes held by indorsees. *Pagan* v. *Wylie* and *Grahame* v. *Gillespie*, reported in Morison's Dict. Dec. 1660, 1453, and more briefly in Ross on Bills & Notes, 194, 195. *Isnard* v. *Torres*, 10 La. Ann. 103.

In *Young* v. *Grote*, 4 Bing. 253; *S. C.* 12 Moore, 484; although Chief Justice Best quoted with approval the opinion of Pothier, the point adjudged was much narrower; for in that case the drawer had left with his wife checks signed by himself in blank, and the fraudulent alteration was made by his clerk, who was directed by the wife to fill out the check; and, it having been found by an arbitrator that the maker had been guilty of gross negligence by causing his check to be delivered to his clerk in such a state that the latter could and did by the mere insertion

of additional words make it appear to be his check for a larger sum, it was held by the court that he could not recover that sum from his banker, who had paid it.

The subsequent comments of eminent English judges upon *Young* v. *Grote* have limited the doctrine there laid down to the peculiar circumstances of that case.

In *Robarts* v. *Tucker*, 16 Q. B. 560; *S. C.* 15 Jur. 987; 20 L. J. (N. S.) Q. B. 270; bankers who had paid a bill upon a forged indorsement were held not to be entitled to recover the amount from their customer, the drawer. The judgment in the Exchequer Chamber was delivered orally by Baron Parke, and his comments upon *Young* v. *Grote* are variously stated in the different reports. In 16 Q. B. 580, he is reported to have said : " This was in truth considering that the customer had by signing a blank cheque given authority to any person in whose hands it was to fill up the cheque in whatever way the blank permitted." But no such general statement appears in either of the other reports. In 15 Jur. 988, the words attributed to him are : " But in that case there was negligence in the drawing of the cheque itself, which was the authority given by the drawers to the bank." The report in the Law Journal is fuller and apparently more exact : " There the court held, that the cheque was drawn in so negligent a way as to facilitate the forgery and to exonerate the banker from liability to his customer for paying the amount. They, in truth, consider that he, as it were, gave authority to the party to fill up the cheque in the way it was filled up." 20 L. J. (N. S.) Q. B. 273. This substantially accords with the later statements of the same eminent judge, and of Lord Cranworth and of Chief Justice Erle, in deliberately considered judgments, which put the decision in *Young* v. *Grote* upon the ground that the customer's negligence in the transaction had afforded opportunity for the fraud of his clerk, by which the bank was deceived. *Bank of Ireland* v. *Evans Charities*, 5 H. L. Cas. 389, 410, 413. *Orr* v. *Union Bank of Scotland*, 1 Macq. 513, 523. *British Linen Co.* v. *Caledonian Ins. Co.* 4 Macq. 107, 114. *Ex parte Swan*, 7 C. B. (N. S.) 400, 431, 433. See also *Arnold* v. *Cheque Bank*, 1 C. P. D. 578, 587, 588.

In some of these cases, the negligence of the drawer was spoken of as creating an estoppel. But that view has been

disposed of by Chief Justice Cockburn, with his characteristic clearness and vigor, saying: " The case of *Young* v. *Grote*, on which so much reliance has been placed, and which is supposed to have established this doctrine of estoppel by reason of negligence, when it comes to be more closely examined, turns out to have been decided without reference to estoppel at all. Neither the counsel in arguing that case, nor the judges in deciding it, refer once to the doctrine of estoppel. The question arose on a disputed item in an account between a banker and his customer, which had been referred to arbitration, and the question raised by the arbitrator was on whom the loss which had arisen from payment of a check, in which, by the carelessness of the customer, an opportunity had been afforded for increasing the amount, should fall. It was held, not that the customer was estopped from denying that the check was a forgery, but that as the loss, which would otherwise fall on the banker, who had paid on a bad check, had been brought about by the negligence of the customer, the latter must sustain the loss. As the question arose on an account submitted to arbitration, the matter was decided without reference to any technicality ; but I am disposed to think that, technically looked at, the matter would stand thus : The customer would be entitled to recover from the banker the amount paid on such a check, the banker having no voucher to justify the payment ; the banker, on the other hand, would be entitled to recover against the customer for the loss sustained through the negligence of the latter. Possibly, to prevent circuity of action, the right of the banker to immunity in respect of the loss so brought about would afford him a defence in an action by the customer to recover the amount." *Swan* v. *North British Australasian Co.* 2 H. & C. 175, 189, 190. And in *Halifax Union* v. *Wheelwright*, L. R. 10 Ex. 183, 192, which was very similar in its facts to *Young* v. *Grote*, and in which the alteration of certain drafts was made by a clerk entrusted with the duty of filling them up, the Court of Exchequer, after advisement, expressed the opinion that the ground assigned by Chief Justice Cockburn, of avoiding circuity of action, was certainly the most exact ground.

The maker of a promissory note holds no such relation to the indorsees thereof as a customer does to his banker. The rela-

tion between banker and customer is created by their own contract, by which the banker is bound to honor the customer's drafts; *Marzetti* v. *Williams*, 1 B. & Ad. 415 ; *Bank of the Republic* v. *Millard*, 10 Wall. 152; *Carr* v. *National Security Bank*, 117 Mass. 45; and if the negligence of the customer affords opportunity to a clerk or other person in his employ to add to the terms of a draft and thereby mislead the banker, the customer may well be held liable to the banker. But, even as between customer and banker, the former has not been held liable for an unauthorized alteration or addition by a stranger. And that the signer of a note, complete upon its face, and not entrusted by him to any person for the purpose of being filled up or added to, but afterwards altered, without his authority or assent, by the insertion of additional words in blank spaces therein, should be held to have contracted with every subsequent innocent holder who may be thereby defrauded, and to be liable to him in an action on the note in its altered form, is unsupported by any English decision of which we are aware, and appears to us to be inconsistent with the weight of American authority and unfounded in principle.

In *Angle* v. *Northwestern Ins. Co.* 92 U. S. 330, the rule was stated to be that, where a party to a negotiable instrument entrusts it to another for use as such, with blanks not filled up, such instrument, so delivered, carries on its face an implied authority to fill up the blanks necessary to perfect the same, and, as between such party and innocent third persons, the person to whom the instrument is so entrusted must be deemed the agent of the party who committed the instrument to his custody, in fill ing the blanks necessary to perfect the instrument ; but that the custody of the paper, under such circumstances, does not confer authority to make any addition to the terms of the note, or to make a new instrument, by erasing what is written or printed, or by filling the blanks with stipulations repugnant to the plainly expressed intention of the instrument as shown by its written or printed terms ; and, if any such addition or alteration of a material character is made, without the consent of the party from whom the paper was received, it will avoid the note, even in the hands of an innocent holder. 92 U. S. 331, 338, 340.

In *Fay* v. *Smith*, 1 Allen, 477, it was held by this court that an alteration by the payee, though without fraudulent intent, of a promissory note, by adding at the end the words "with interest," did not bind the maker, because he never made nor authorized to be made the note which the payee accepted ; and that, by reason of such alteration, the note was wholly void as against the maker, even in the hands of a *bonâ fide* indorsee. A similar decision was made in *Draper* v. *Wood*, 112 Mass. 315, in which a joint promisor, before the delivery of the note, added the words " at twelve per cent.," without the authority of his co-promisor. It is true that, in the last case, the point that the defendant should be held liable because he had carelessly signed the note in such a form as admitted of the alteration afterwards made was not taken at the trial, and therefore was not consid ered by this court.

But in *Wade* v. *Withington*, 1 Allen, 561, a similar question, upon facts more closely resembling those now before us, was considered ; the defence that a note for one hundred dollars had been fraudulently altered after it had been signed, by inserting the words " and forty," was sustained against a *bonâ fide* indorsee, although the alteration could not be detected upon the most careful scrutiny; and Chief Justice Bigelow distinguished the cases of *Young* v. *Grote* and *Putnam* v. *Sullivan*, above cited, upon the ground that in those cases the instruments were filled up and put in circulation by agents, to whom the parties had entrusted them, signed in blank, for that purpose. The same distinction was again taken in *Ives* v. *Farmers' Bank*, 2 Allen, 236, 241, in *Sewall* v. *Boston Water Power Co.* 4 Allen, 277, 282, and in *Belknap* v. *National Bank of North America*, 100 Mass. 376, 381.

The fact that, in the present case, the alteration was made before the note was delivered to the payee, and by one of the makers, at whose request and for whose accommodation the others had signed it, does not enlarge their liability. He had no authority from them, express or implied, to alter or add to the terms of the note. *Wood* v. *Steele*, 6 Wall. 80. *Agawam Bank* v. *Sears*, 4 Gray, 95. *Draper* v. *Wood*, 112 Mass. 315. *Waterman* v. *Vose*, 43 Maine, 504.

The case of *Goodman* v. *Eastman*, 4 N. H. 455, is singularly like the case at bar. A note for twenty dollars was altered by

one of two makers, after it had been signed by the other and before it was delivered to the payee, by inserting the words "one hundred and" before "twenty;" and it was held that the other maker was not liable upon it, because the payee had been deceived and defrauded, not by any abuse of the confidence which the defendant reposed in the maker, and for which the defendant ought to be responsible, but by a forgery, for which he was not responsible.

The decision of the Commission of Appeals in *Redlich* v. *Doll*, 54 N. Y. 234, cited for the plaintiff, was that the delivery of a promissory note, containing the word "at" followed by a blank for the place of payment, carried with it implied authority to any *bonâ fide* holder to fill the blank. But it was said in the opinion, that "if the word 'at' had not been inserted in the note, it would have been a complete note without the insertion of other words" — clearly implying that, if the form of the note had not called for the insertion of additional words, none could have been inserted so as to bind the maker.

It had been previously decided by the Court of Errors of the State of New York, in *Woodworth* v. *Bank of America*, 19 Johns. 391, that the addition, by the maker of a note, of words designating the place of payment, discharged an indorser; and by the Supreme Court of that state, in *Nazro* v. *Fuller*, 24 Wend. 374, in accordance with the English decisions, that such an addition by the payee discharged the maker.

In the subsequent case of *McGrath* v. *Clark*, 56 N. Y. 34, it was held by the Court of Appeals, that where a note in this form, "$175. Whitehall, N. Y., Nov. 27, 1868.        after date I promise to pay Wm. McGrath or bearer $175 at," was signed by the maker and indorsed by the payee, and the maker afterwards, and before its delivery to the indorsee, filled the blanks by inserting "six months" at the beginning, and by adding at the end "the National Bank of Poultney with interest," the addition of the words "with interest" was an unauthorized alteration which invalidated the note as against the indorser; and Chief Justice Church said: "The rule that 'whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it,' is not applicable, for the reason that the indorser did not, in

any legal sense, enable the maker to make the alteration. He indorsed a note for a specific sum, which, as we have seen, conferred no authority upon the maker to change or alter it. If it did, indorsers would occupy a perilous position. An indorsement of a note for $1000 would authorize the maker to change it to $10,000. It matters not whether the amount is large or small, the principle involved is the same."

In *Worrall* v. *Gheen*, 39 Penn. St. 388, the case stated for the opinion of the court was as follows : A printed blank note was filled up by the maker, by inserting " 50 " at a little distance from the mark $, and by writing "fifty" near the end of a blank line and close to the word " dollars," and in this condition was signed by the maker and indorsed by the payee. The maker then took the note away, and fraudulently altered its amount from $50 to $150, by adding the figure 1 between " $ " and " 50," and the words " one hundred & " before the word " fifty." The fraud was so well executed that the appearance of the note was not such as to excite the suspicions of a man in ordinary business, although on inspection a difference might be perceived in the color of the ink with which the words " one hundred & " were written. The note as thus altered was discounted by the plaintiff, who had it regularly protested at maturity, and sued the indorser thereon. It was held that he could not be charged upon the note in its altered form ; and Chief Justice Lowrie, after saying that the court could not follow the Scotch cases of *Pagan* v. *Wylie* and *Grahame* v. *Gillespie*, above cited, and would not be understood as denying, but only as doubting, the case of *Young* v. *Grote*, because it might be that a check on a banker, so written as to be easily altered by the bearer of it, ought to be treated in the same manner as instructions sent by a principal to his agent, in which the latter is not allowed to suffer for the carelessness of the former, proceeded as follows : " This is a case of a printed form of a promissory note, filled up by the maker, and then indorsed for his accommodation by another, and then altered by the maker to a larger sum by taking advantage of some vacant space left in the form. If the sum had been left entirely blank, the inference would have been that the parties authorized the holder to act as their agent in filling it in, and they would have been bound accordingly.

But where. a sum is actually written, we can make no such in-ference from the fact that there is room to write more. This fact shows carelessness; but it was not the carelessness of the indorser, but the forgery of the maker, that was the proximate cause that misled the holder. And we know not how we can say that a man can be chargeable with a contract because he did not use proper precaution in guarding against forgery in any of the thousand forms it may take. We know of no way of saving purchasers of negotiable paper from the necessity and the consequences of relying on the character of the man they buy it from, if they do not take the trouble of inquiring of the original parties."

The decision in *Worrall* v. *Gheen*, that the plaintiff might re-recover upon the note as originally executed, is treated in *Neff* v. *Horner*, 63 Penn. St. 327, as exceptional and doubtful; is opposed to the decisions of this court in *Wade* v. *Withington*, 1 Allen, 561, *Draper* v. *Wood*, 112 Mass. 315, and *Citizens' National Bank* v. *Richmond*, 121 Mass. 110; and appears to have been founded upon a misunderstanding of the decision in the Scotch case of *Grahame* v. *Gillespie*, in which, as to the bill on which the defendants were held not to be liable in its altered form, the court, reversing a judgment which held them liable for the original amount, "suspended the letters simpliciter," which we understand to be equivalent to ordering a nonsuit. Morison's Dict. Dec. 1453, 1457. Ross on Bills & Notes, 195, 201.

The later cases in Pennsylvania, we are constrained to say, appear to us to be inconsistent and unsatisfactory, both in their reasoning and in their results.

In *Garrard* v. *Haddan*, 67 Penn. St. 82, the person from whom the consideration of the note moved filled up a printed blank form by inserting the words " one hundred," and, after it had been signed by the maker, added the words " and fifty," so that the alteration could not have been detected upon the most careful inspection. The lower court, upon the authority of *Worrall* v. *Gheen*, above stated, gave judgment for a *bonâ fide* in-dorsee against the maker for the original amount. Upon a writ of error sued out by the defendant, the judgment was affirmed. We cannot regard as authoritative the expression of opinion that the maker was liable upon the note as altered, for several rea-

sons : 1st. It was purely extrajudicial, for the plaintiff had sued out no writ of error.    2d. It relies upon the Scotch decisions which the same court in *Worrall* v. *Gheen* had declined to follow.    3d. It avowedly rejects the distinction taken by this court in *Wade* v. *Withington*, 1 Allen, 561, above cited, restricting such liability to cases in which the alteration is made by an agent, clerk or other person in whom the maker has reposed confidence.    4th. It asserts that no such restriction was made in *Putnam* v. *Sullivan*, 4 Mass. 45 — in direct contradiction of the statement of Chief Justice Parsons in that case, quoted in the early part of this opinion.    5th. It inaccurately states that *Worrall* v. *Gheen* " was a case of a perceptible alteration ; " whereas that case, as already mentioned, expressly found that " the fraud was so well executed that the appearance of the note was not such as to excite the suspicions of a man in ordinary business ; " and according to the opinion in *Phelan* v. *Moss*, 67 Penn. St. 59, delivered on the same day as that in *Garrard* v. *Haddan*, the only material question was whether the indorsee took it in good faith.

In *Zimmerman* v. *Rote*, 75 Penn. St. 188, in which there was a memorandum on the margin of the note, making the time of payment conditional upon the amount of profits received by the maker from the patent right in consideration of which the note was given, it was held that, although that memorandum was found by the jury to have been written by the parties when the note was made, and intended to be a substantive part thereof, yet the fraudulent cutting or tearing off of that part did not destroy the note or affect its validity in the hands of an indorsee.    In *Brown* v. *Reed*, 79 Penn. St. 370, where a similar fraud was perpetrated by combining all the terms in one writing, so cunningly framed that by dividing it perpendicularly one half would be left a complete promissory note, it was held that such a division of the writing was a forgery which destroyed the note, unless the line of demarcation was so apparent on the face of the writing that the maker was negligent in not observing it.    As in each of these two cases the instrument, in the form in which it was signed by the defendant, was not an unconditional promise for the payment of money, and therefore was not a negotiable promissory note, it is difficult to understand how the defendant could be bound to anticipate that it might be negotiated to a *bonâ fide*

indorsee. *Benedict* v. *Cowden*, 49 N. Y. 396. *Gerrish* v. *Glines*, 56 N. H. 9. *Stults* v. *Silva*, 119 Mass. 137.

The other cases cited by the learned counsel for the plaintiff do not, upon examination, appear to support their position. In *Cochran* v. *Nebeker*, 48 Ind. 459, which was substantially similar in its facts to *Zimmerman* v. *Rote*, 75 Penn. St. 188, above cited, the decision was that an answer of the maker, alleging that the tearing off of the condition, after the delivery of the note, by some one to the defendant unknown and without his knowledge or consent, set forth a good defence to an action by an indorsee. In *Yocum* v. *Smith*, 63 Ill. 321, the maker, who was held liable upon a note in which the words "and twenty" had been inserted between the words "three hundred" and "dollars," had been informed by letter from the indorsee, very soon after the date of the note, that he had bought it and of its date and amount, and made no objection for nearly a year afterwards, so that he might well be held to have ratified it in its altered form.

In *Holmes* v. *Trumper*, 22 Mich. 427, it was held, in a very able judgment, delivered by Mr. Justice Christiancy, and in which Chief Justice Campbell and Justices Graves and Cooley concurred, that a promissory note which consisted of a printed blank, with the amount and the time and place of payment filled in with writing, and was altered, without the knowledge or consent of the maker, by adding, after the printed words "with interest at," at the end of the note, the words "ten per cent.," was thereby rendered void, even against an indorsee who bought it in good faith. That decision goes further than the case before us requires; but some of the reasons are so forcibly stated, and so applicable, that we cannot close this opinion better than by quoting a few passages.

"The argument amounts simply to this: That by the maker's awkwardness or negligence his note was issued by him in a shape which rendered it somewhat easier for another person to commit a crime than if he had taken the precaution to erase the word 'at' and to draw a line through the blank which followed it; and that a forgery committed by filling this blank would be less likely to excite suspicion than if committed in some other way.

"But how such a crime, whether committed in this or in any other way, could create a contract on the part of the maker, we

confess ourselves unable to comprehend; nor are we satisfied that a forgery committed in this way would be any less liable to detection than if committed in many other ways. The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above his name in apparent harmony with the rest of the instrument; or as if an instrument were written with ink, the material of which would admit of easy and complete obliteration or fading out by some chemical application which would not affect the face of the paper; or by failing to fill any blank at the end of any line which might happen to end far enough from the side of the page to admit the insertion of a word."

" Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery, in whatever mode it may be accomplished; and, unless perhaps when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been ; and the parties taking such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders.

" If promissory notes were only given by first class business men, who are skilful in drawing them up in the best possible manner to prevent forgery, it might be well to adopt the high standard of accuracy and perfection which the argument in behalf of the plaintiff in error would require. But for the great mass of the people, who are not thus skilful, nor in the habit of frequently drawing or executing such paper, such a standard would be altogether too high, and would place the great majority of men, of even fair education and competency for business, at the mercy of knaves, and tend to encourage forgery by the protection it would give to forged paper." 22 Mich. 434–436.

*Judgment for the defendants*