JAMES A. MUNROE *vs.* HARRY R. STANLEY, executor & administrator, & others.

Suffolk.    January 20, 1915. — March 2, 1915.*

Present: ˙RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Bills and Notes,* Alteration, Incomplete instrument, Holder in due course. *Assignment. Fraud. Pledge. Estoppel. Equity Jurisdiction.*

*Whether,* where the maker of two promissory notes delivers them, with a blank space in each of them where the name of the payee should be, to one who fraudulently alters one of them by raising its amount and the other by raising its

* This case, although decided on the same day as *Stone* v. *Sargent, post,* 445, was decided before that case and by order of the court is reported before it although that case was argued first.

amount and changing its date, and then, at periods about a year and a half apart, negotiates them for value to a purchaser who, after he receives such notes, in good faith inserts his own name as payee, such purchaser can be considered a holder in due course entitled to enforce the notes under R. L. c. 73, § 141, according to their original tenor, or whether he is affected with notice so that he cannot enforce them for any amount, was not determined in this suit, where the maker did not object to paying the notes according to their original tenor and did not appeal from a decree to that effect.

The maker of two notes when he signed them left blank the place for the payee's name and delivered them in that condition to one who was to procure for him a loan amounting to the face value of the notes, at the same time delivering as security a policy of insurance upon his life and an absolute assignment thereof in which the place for the assignee's name was left blank. The person to whom the notes thus were delivered fraudulently altered one by raising its amount and delivered it with the policy and the assignment to a creditor of a third person in part payment of the third person's debt. A year and a half later he altered the second note by changing its date and raising its amount and stating on its face that it was secured by the same policy as was the first and delivered it to the same person for cash. The person to whom the notes and the policy were delivered afterwards wrote his own name into the blank places. In a suit in equity by the maker against the holder of the notes and of the policy and assignment a decree was entered with the consent of the maker that upon payment of the notes according to their original tenor they and the policy and assignment should be delivered to him. The defendant alone appealed. *Held,* without deciding whether the defendant had any right to hold the security at all, that he was not a purchaser for value of the first note and certainly had no right to hold the policy as security for more than the value of the first note according to its original tenor.

It also was *held* that the mere fact that, when the insured executed the assignment of his policy and delivered it to the fraudulent person, he left a blank where the name of the assignee should have been written, did not estop him from showing the real authority of the fraudulent person, because the uncompleted notes and assignment were sufficient to put the defendant upon inquiry as to the authority of the person who delivered them to him, and inquiry would have disclosed the fraud.

BILL IN EQUITY, filed in the Superior Court on December 2, 1913, and afterwards amended, against Harry R. Stanley as executor of the will of Sumner C. Stanley and as administrator of the estate of Charles R. Stanley, the Connecticut Mutual Life Insurance Company and Atherton N. Hunt and Emery B. Gibbs, administrators with the will annexed of George E. Williams.

The allegations of the bill were in substance that the plaintiff on April 1, 1909, was insured with the defendant insurance company; that on that date he borrowed $600 of George E. Williams, the general agent of the insurance company in Boston,

and gave him two notes, each for $300, bearing interest, and delivered to him his policy of insurance as security; that on about that date Williams fraudulently altered one of the notes so that its amount was $3,000 and delivered to the defendant Stanley as administrator of the estate of Charles R. Stanley for value the note, the policy and an assignment of the policy; that Williams fraudulently altered the other note dated April 1, 1909, so that it was dated September 20, 1910, and its amount was $1,000 and on September 20, 1910, delivered that note for value to the defendant Stanley; that on or about July 1, 1911, Williams forged the plaintiff's name upon a note for $1,000 and delivered it for value to Stanley, and on December 15, 1912, did the same as to another note for $1,000.

The prayers of the bill were in substance that the notes be declared to be forgeries and cancelled, that the assignment of the insurance policy be declared void and that the defendants be enjoined from any action inconsistent with the plaintiff's rights so declared.

The case was heard by *Wait*, J., a commissioner having been appointed under Equity Rule 35, to take the evidence.

From the testimony it appeared that on or about April 1, 1909, the plaintiff, at the suggestion of Williams, delivered to him two promissory notes signed by him, each for $300, for Williams to use in procuring a loan of $600 for the plaintiff with which to take up a loan previously made to the plaintiff by the Connecticut Mutual Life Insurance Company. The place for the name of the payee was blank in both notes.

At the same time the plaintiff delivered to Williams his insurance policy and an instrument of absolute assignment of the policy and of the power of attorney, in which were blanks for the names of the assignee and of the attorney, the oral agreement between the plaintiff and Williams being that the policy should be used to secure the loan of $600 only.

Williams fraudulently altered one of the notes so that it called for the payment of $3,000, and delivered it and the policy and the instrument of assignment and of power of attorney to William Odlin, Esquire, acting for the defendant Stanley, as part payment of a loan owing to the estate of Charles R. Stanley from another customer of Williams. Later the defendant wrote into the blank

space on the note the name, "Estate of Charles R. Stanley," as payee, and into the blank spaces in the instrument of assignment of the policy, the name, "Harry R. Stanley, Admr. of Estate of Charles R. Stanley," as assignee, and the name, "Harry R. Stanley, Admr.," as attorney in the power of attorney.

On or about September 20, 1910, Williams fraudulently altered the second $300 note by raising it from $300 to $1,000, changing its date from April 1, 1909, to September 20, 1910, and writing on its face the words "Policy 239564 Conn. Mutual as security." He then on September 20, 1910, delivered this altered note to the defendant Stanley in consideration for $1,000. The defendant Stanley afterwards wrote in as the payee of this note, "Harry R. Stanley, Executor of Estate of Sumner C. Stanley."

The other two notes described in the bill were wholly forgeries.

The trial judge filed the following memorandum of his findings:

"I find that before 1909 Munroe borrowed $600, of the Connecticut Mutual Life Insurance Company, through Williams, and gave to Williams an assignment of his policy of insurance and the policy of insurance, to be used as security for the loan. When the loan became due he desired to pay it, but at the suggestion of Williams allowed it to stand, but gave Williams two notes each for $300, and Williams then advanced the $600, retaining the notes, policy and assignment, and apparently paid the Insurance Company.

"Williams raised one note to $3,000, and one to $1,000; and on April 1, 1909, borrowed from Stanley, $3,000; on September 20, 1910, $1,000; on July 1, 1911, $1,000, and January 15, 1912, $1,000, and delivered the policy and assignment as security.

"The notes of $3,000, April 1, 1909, and $1,000, September 20, 1910, bore the genuine signature of Munroe. Those of July 1, 1911, and January 15, 1912, bore forged signatures of Munroe. The note for $3,000 has been raised from $300. The note for $1,000 has been raised from $300 and the date changed.

"Munroe declares his readiness to pay $600 and interest."

A final decree was made that the defendant Stanley upon payment to him of $300 with interest from April 1, 1909, and of $300 with interest from September 20, 1910, should deliver to the plaintiff the policy of insurance together with the assignment of

the policy and the two notes dated respectively April 1, 1909, and September 20, 1910, signed by said James A. Munroe and secured by the assignment.

The defendant Stanley appealed.

In this court it was agreed that the notes of July 1, 1911, and January 15, 1912, were forgeries.

*J. M. Hallowell,* for the defendant Stanley.

*F. P. Garland,* (*J. C. Thompson* with him,) for the plaintiff.

BRALEY, J. The third and fourth of the promissory notes referred to in the bill and specifically set forth in the schedule annexed to the answers of the defendant Stanley, each of which purports to be signed by the plaintiff as maker, having been forged by Williams, are mere nullities. *Wade* v. *Withington,* 1 Allen, 561. *Mackintosh* v. *Eliot National Bank,* 123 Mass. 393. *Rowe* v. *Putnam,* 131 Mass. 281.

The first and second notes, although they bear the plaintiff's genuine signatures, were incomplete instruments when delivered to Williams as the name of the payee was left in blank, and the blank remained unfilled when Williams fraudulently raised the principal of each note and delivered them to the defendant, who wrote in as payee of the first note the name of the estate of which he was administrator, and in the second note his own name as executor of the will of the testator. But as the plaintiff, who has not appealed from the decree, apparently concedes that the defendant can enforce the notes according to their original tenor it is unnecessary to decide on this branch of the case whether under R. L. c. 73, §§ 31, 141, he is a holder in due course. *Holbrook* v. *Schofield,* 211 Mass. 234, 237.

The plaintiff also as part of the transaction having delivered as collateral security for payment of the notes his policy of life insurance in the defendant company, with an assignment under seal, absolute upon its face, and the name of the assignee in blank, which Williams subsequently delivered with the first note to the defendant's agent who thereupon filled in the name of "Harry R. Stanley, Admr. of Estate of Charles R. Stanley, Boston, Mass.," the defendant contends, that he can treat the notes as evidence of the indebtedness, and retain the policy until repaid the full amount of the moneys advanced.

It is plain from his own evidence as well as from the evidence

of his agent, and the indorsement on the face of the second note, that at the time of transference the policy was understood to be held as security for the first note. It was to be surrendered and the assignment discharged upon payment. If, as the defendant urges, the notes are treated as wholly avoided, there is no precedent obligation or debt binding on the plaintiff which must be satisfied before relief can be decreed. The distinction between the enforcement of a mortgage where the debt is barred by the statute of limitations as in *Thayer* v. *Mann*, 19 Pick. 535, and *Jeffrey* v. *Rosenfeld*, 179 Mass. 506, and the present case is obvious. The statute of limitations does not extinguish the debt, it merely bars the remedy. While it could be found on the testimony of the plaintiff, that Williams had authority upon negotiation to fill in the blank necessary to complete the notes, he had none to change for his own gain what was shown by their written terms. And at common law they would be wholly void even in the hands of a purchaser for value without notice, and under the statute enforceable only for the amount for which they were originally given. *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196, 202, 203, and cases cited. R. L. c. 73, §§ 31, 141.

The defendant furthermore as between himself and the plaintiff is not a purchaser for value of the first note. It was not taken in payment of any antecedent debt of the plaintiff, but was applied at Williams's request in satisfaction of an outstanding loan made by the defendant to another party whom he purported to represent. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 199. *Clark* v. *Flint*, 22 Pick. 231, 243. *Railroad Co.* v. *National Bank of the Republic*, 102 U. S. 14. See *Peoples' Savings Bank* v. *Bates*, 120 U. S. 556. The obligation of the plaintiff for money lent having rested solely on the notes, the debt or obligation incurred by Williams to the defendant as distinguished from the original consideration cannot be enforced through retention of the policy. *Wheelock* v. *Freeman*, 13 Pick. 165. *Adams* v. *Frye*, 3 Met. 103. *Stoddard* v. *Penniman*, 108 Mass. 366. *Greenfield Savings Bank* v. *Stowell, supra. Mackintosh* v. *Eliot National Bank, supra. Burnes* v. *New Mineral Fertilizer Co.* 218 Mass. 300.

It is also contended that, having left the place for the name of the assignee unfilled, the plaintiff is estopped from showing the

actual transaction and the agency of Williams. *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181. The defendant is not a purchaser for value of a non-negotiable contract, from one who apparently is the owner of the legal title, but of negotiable paper for which it was accepted as collateral security even if not physically attached to the notes. The record contains no representations relating to the policy or to the notes, and under the circumstances its possession by Williams did not raise a conclusive presumption that he was vested with the absolute ownership. *Commercial National Bank* v. *Bemis,* 177 Mass. 95, 98. The question of estoppel by conduct, or equitable estoppel, is a question of fact if more than one inference can be drawn from the testimony. *Snow* v. *Hutchins,* 160 Mass. 111, 116. The presiding judge, who ordered a decree for the plaintiff, was warranted on the record in finding that the defendant in discounting the notes and making the loans dealt with him as the plaintiff's agent, and not as a borrower on his own account, and that the money was lent to the plaintiff secured by a pledge of the plaintiff's policy. The evidence moreover leaves no doubt, that the transaction in question was similar in character to other transactions, in which the defendant discounted notes presented by Williams upon the understanding that he was acting for the makers. The uncompleted notes were sufficient to put the defendant upon inquiry as to Williams's authority, and upon communication with the plaintiff and maker, the fraud would have been easily discovered. *Record* v. *Littlefield,* 218 Mass. 483. *Tower* v. *Stanley, ante,* 429. R. L. c. 73, § 31.

It also should be noticed that the second note, which until changed bore the same date as the first note, was delivered to the defendant more than fifteen months after Williams received it from the plaintiff, and although by § 31 the holder could fill in the name of the payee, its insertion does not appear to have been within a reasonable time. We prefer, however, to rest our decision on the grounds previously stated.

Nor can the claim, that the plaintiff pledged the policy to Williams who repledged it for his own purposes to the defendant, be sustained. The plaintiff did not borrow from Williams. The money when procured was to be applied in payment of the plaintiff's overdue notes for like amounts running to the insurance

company as payee, with the policy as collateral, which remained in Williams's possession and control as its general agent.

The defendant having failed to bring himself within the principle, that a purchaser for value in good faith from one entrusted with the apparent title and absolute ownership of personal property is protected from the prior right of the true owner and pledgor, because the pledgor is estopped from showing the true state of the title, or that where one of two innocent parties must suffer from the fraud of a third party, the party whose negligence has caused the wrong must bear the loss, the decree is affirmed with costs. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. *Gardner* v. *Beacon Trust Co.* 190 Mass. 27, 28, 29.

*Ordered accordingly.*