———o———

CAPITAL BANK, Appellant. *vs.* D. H. ARMSTRONG, *et al.*, Respondents.

1. *Promissory notes—Unauthorized alteration—Subsequent ratification—Instructions—Failure to call attention of trial court to evidence—Burden of proof, etc.*—In suit on a promissory note, where defendant pleaded a material and unauthorized alteration of the note without his knowledge, and plaintiff's replication denied such alteration of the paper, *held*, 1st, that, under the pleadings evidence showing defendant's subsequent ratification of the change was incompetent, and that the instructions were not faulty, for ignoring such evidence ; 2nd, that, aside from the state of the pleadings, the Supreme Court would not pass upon the legal effect of such evidence, in the absence of instructions offered, directing the attention of the trial court to that question ; 3d, that, under the pleadings, after the defendant had introduced testimony tending to show such unauthorized alteration, the burden was shifted upon plaintiff to show that the alleged alteration, at the time it occurred, was made by defendant's authority.

Capital Bank v. Armstrong, et al.

2. *Promissory note—Alteration putting on inquiry—Indorser not bound wher alteration was subsequent to his indorsement, unless, etc.*—The indorser of a note will not be held bound by a fraudulent alteration made subsequently to his indorsement, unless through negligence the instrument has been so loosely drawn as to easily admit of alteration, and in a manner not calculated to place a man of ordinary prudence on the alert. But where no blank space was left unfilled, and the rate of interest was, after indorsement and without the knowledge of the indorser, inserted by interlineation in ink of a different color from that employed in the remainder of the note, it was held that the instrument upon its face bore such indications as should have excited suspicion and provoked inquiry; and that under such circumstances the indorser was not bound.

3. *Instructions commenting on evidence improper.*—The court errs in giving an instruction commenting upon the evidence, *ex. g.* selecting certain portions of it, and informing the jury that that portion has a tendency to establish a controverted point.

4. *Promissory notes-Alteration made without fraud, etc.—Effect on prior indorser.*—The mere fact, that the alteration of a note is not made fraudulently, nor for the purpose of changing its legal effect, will not change the rule as to the liability of a prior indorser.

5. *Objections to testimony not stating the ground thereof.*—Objections to testimony not setting forth the grounds on which they are based, cannot be assigned for error.

### *Appeal from St. Louis Circuit Court.*

*A. M. Gardener, with S. Knox,* for Appellant, cited Nedecker et al. vs. Cochran, Am. Law Reg., Nov. 1875, p. 697; Chapman vs. Rose, 56 N. Y., 137; Seybel vs. Nat. Currency Bk., 54 N. Y., 288; Bank vs. McCoy. 69 Penn. St., 204; Zimmerman vs. Rote, 75 Penn., 188; Woolfolk vs. Bank of America, 10 Bush, [Ky.] 517; Phelan vs. Moss, 67 Penn. St., [17 P. F. Smith], 59; Garrand vs. Haddan, 67 Penn. St. [17 P. F. Smith], 82; Trigg vs. Taylor, 27 Mo., 248; Young vs. Grote, 4 Bingh., 253; Bank of Commonwealth vs. Curry, 2 Dana, 142; Muskgrove vs. Eldred, 9 Wall. 544; Mich. Ins. Co. vs. Leavenworth, 30 Vt., 11; Nebecker vs. Cutsinger, 48 Ind., 436; Rumbolt vs. Eddy, 34 Iowa. 440; Lake vs. Reed, 29 Iowa, 258; Swift vs. Tyson, 16 Pet., 1; Goodman vs. Symonds, 20 How., 452; Magee vs. Badger, 34 N. Y., 247: Dow's Ex'rs vs. Spenny's Ex'rs, 29 Mo., 386; Bank of U. S. vs. Dunn, 6 Pet., 51; Walton vs. Sutton, 1 Dun & East, Term R. 296; Churchill vs. Suter, 4 Mass., 156; Houghton vs. Page, 1 N. H., 60; Coleman vs. Wise, 2 John., 165.

Capital Bank v. Armstrong, et al.

*Dryden & Dryden, with whom was A. Reese,* for Respondents, cited Trigg vs. Taylor, 27 Mo., 245 ; Hascall vs. Champoin, 30 Mo., 136 ; Britton vs. Dierker, 46 Mo., 591 ; Hood vs. Steele, 6 Wall., 80 ; Wash. S. Bank vs. Ecky, 51 Mo., 273 ; 8 Mo., 335 ; Cheaton vs. Chambless, 6 Rand. 86 ; Carroll vs. Paul's adm'r, 16 Mo., 241-2 ; Fine vs. St. Louis Schools, 30 Mo., 176 ; Anderson vs. Kinchelor, 30 Id., 525 ; Rose vs. Spies, 44 Id., 23.

SHERWOOD, Judge, delivered the opinion of the court.

Action on two promissory notes, made by defendant, Murdock, under the name and style of Murdock & Dickson, dated respectively, September 15th and 17th, 1873, each for $5000, the first payable 90 days, and the second 60 days after date, to the order of defendant, Armstrong, and by him endorsed in blank. The notes are precisely alike with the above noted exceptions, and the following is a copy of one of them, as presented in the court below.

$5000.

St. Louis, *Sept. 17th,* 1873.

*Sixty* days after date *we* promise to pay to the order of

*David H. Armstrong,* *Five Thousand* Dollars, at Capital
*With interest at 10 per cent. per annum after maturity.*
Bank, St. Louis, Mo. Value received.

No. Murdock & Dickson.
Due

The petition contained two counts, each based on one of the notes. The notes were printed forms, but had no blanks for the rate of interest. With the exception of the words in these notes, which I have italicized, the residue were in print. By consent of parties, the original notes are before us, and it is plain to even casual observation, that the entire line in reference to interest, was written with ink of a different color, from that with which the legitimate blanks of the notes were filled. And the interest clauses in addition to that are written above the line, and in such a way as to be obvious to inspection.

Judgment by default was taken against Murdock.

Armstrong answered, admitting the genuineness of his endorsement; but alleging as special matters of defense, that the notes had been altered without his knowledge, authority, or consent, by inserting therein the words: "With Int. at 10 per cent. per annum after maturity."

The reply of the plaintiff denied the new matter contained in the answer.

There was a trial by jury, resulting in a verdict and judgment for the defendant.

There was some conflict of testimony, but the evidence tended strongly to establish the defendant's allegation that the notes had been subjected to an unauthorized alteration by Osborne, the book keeper of Murdock, at the request of the latter, after they had been put into circulation.

And there was testimony tending to show that the alleged alteration took place, after the notes had passed into the hands of the plaintiff, and while the notes were in the custody of its cashier; and that the act was done in the presence of that officer; and there was testimony of a contrary effect. And there was testimony also, tending to show that the defendant had never seen the notes after endorsing them, until suit brought; and there was testimony of an opposite character, to the effect that defendant had seen and examined one or both of the notes; and that some weeks thereafter he had promised to pay them, remarking that the bank was amply secured, and was getting ten per cent. interest for its money.

The court refused all the instructions asked on behalf of the plaintiff, ten in number, and gave the following instructions on the part of the defendant:

"1st. The court instructs the jury that if they believe from the evidence in the cause that the promissory note, dated 13th September, 1873, read and shown to the jury in the case, was made by the defendant Murdock, and endorsed by the defendant, Armstrong, and delivered by him to his co-defendant, Murdock, for the purpose of enabling Murdock, the maker, to raise money thereon for his own use; and if they

shall further believe from the evidence that after the defendant Armstrong had so endorsed and delivered said note to said Murdock, the words and figures, "with interest at 10 per cent. per annum after maturity," now appearing in said note, were written therein without the knowledge, consent or authority of the defendant Armstrong, by said Murdock, or by any agent or clerk of his, whether done in the presence of any officer or agent of plaintiff, or not, and whether with or without the knowledge of the plaintiff, the verdict should be for the defendant Armstrong on the second count."

"2d. The court instructs the jury that if they believe from the evidence in this case that the promissory note, dated 17th September, 1873, read and shown to the jury in this case, was made by the defendant Murdock, and endorsed by the defendant Armstrong, and delivered by him to his co-defendant Murdock for the purpose of enabling the maker to raise money thereon for his own use; and if they shall further believe that after the defendant Armstrong had so endorsed and delivered said note to said Murdock, the words and figures "with interest at 10 per cent. per annum after maturity," now appearing in said note, were written therein, and without the knowledge, consent or authority of the defendant Armstrong, by said Murdock or by any agent or clerk of his, whether done in the presence of any officer or agent of the plaintiff or not, whether with or without the knowledge of the plaintiff, the verdict of the jury should be for the defendant Armstrong on the first count."

"3d. The court instructs the jury that if they believe from the evidence that the provisions as to interest now contained in the notes read in evidence, and now sued on, were not contained in them at the time they were made by Murdock & Dickson, and endorsed and delivered by defendant Armstrong to defendant Murdock, but were inserted afterwards; then the burden of proof is not upon defendant, Armstrong, to prove that said provisions were so inserted without his authority; but it is upon the plaintiff to prove that they were so inserted with his authority; and that, therefore, if they

believe from the evidence in the case that said provisions
were not contained in said notes at the time of their said en-
dorsement and delivery by Armstrong to Murdock, but were
inserted afterwards ; then, unless the plaintiff has further es-
tablished to their satisfaction, by a preponderance of the evi-
dence in.the case, that said provisions were so inserted by the
direction, or with the authority of Armstrong, they should
find against the plaintiff and for the defendant Armstrong.

This case, in many of its essential incidents, is like that of
Evans vs. Foreman (60 Mo., 449) decided at our last term at
St. Joseph, in which numerous authorities were discussed.
There the plea *non est factum* set forth special matter, to the
effect that the defendant had signed the note as surety, and
that after issue the instrument received an unauthorized altera-
tion by the addition thereto of the words: "After due 10 per
cent." The reply alleged that the note, by mistake, was not
drawn in accordance with the intention of the parties; that
correction was made in conformity to such intention, and that
defendant, when made aware of it, ratified the act. The evi-
dence offered on either side tended to support the respective
allegations of the pleadings; and we, applying the principles
deduced, more especially from the authorities of our own
State and those of Pennsylvania, gave approval to instruc-
tions "embodying the theory that though the surety gave no
prior authorization to the addition of the words, "after due
10 per cent.," yet, if having full knowledge of the alteration,
he yielded assent thereto, this would be equally as binding as
if consented to in the first instance ; and that in the absence
of any such ratification, the note as to him was void."

But the marked and striking difference between that case
and the one at bar is this, that in the former the subject of
subsequent assent was directly put in issue by the pleadings,
pointedly presented in the evidence, and distinctly called to
the attention of the jury in the instructions asked on behalf
of both parties litigant. On the contrary, in the case before
us no·such issue was raised or point made, in either of the
above specified modes. But this case, as is conspicuously ap-

parent from the pleadings and evidence, and from the instructions asked on either side, was committed to the hands of the jury on the sole inquiry whether the interest clauses "were inserted in said notes by the authority," or "with the knowledge or consent of said Armstrong."

As this was the single theory on which the cause was tried, it is quite too late to raise the objection here, for the first time, that the 3d instruction given for the defendant is faulty in failing to instruct the jury on the point of subsequent assent or ratification. A party will not be permitted to try a cause on one theory in the trial court, and then insist for a reversal here, on the ground that the instructions given did not comport with a theory on which the cause was not tried. (Trigg vs. Taylor, 27 Mo., 245.)

But in addition to that, as before seen, the reply denied that any alteration had been made in the notes. It was therefore clearly incompetent for the plaintiff to show that defendant had assented to something which its reply averred did not exist, viz, the alteration. It is not permissible for a party to introduce evidence to contradict the allegations of his own pleadings. (Bruce to the use of Pullis vs. Sims, 34 Mo., 246.) And if evidence could not be legitimately introduced to controvert the averments of the plaintiff's own pleadings, clearly that party has no ground of complaint, if after such evidence is introduced, but for another and different purpose, the court of its own motion, and without request from either party, does not go further and instruct the jury as to the bearing that evidence would have upon an issue not raised by those pleadings. In other words, as the defendant alleged, "alteration" and the plaintiff "no alteration," any evidence, and consequently any instructions, bearing on the point of subsequent ratification were wholly foreign to the case, as made by those pleadings.

Our practice is extremely liberal, but would it not be liberality without a parallel to tolerate such a gross inconsistency as that of denying the existence of a fact on the one hand, and then on the other introducing evidence to disprove

the truth of such denial ? And yet the position the plaintiff assumes in reference to the instructions under discussion, involves this precise inconsistency. And here is the whole matter in a nut shell. Instructions should not be given unless there is evidence on which to base them ; but there can be no evidence on which to base them if that evidence overthrows the pleadings of the party who introduces it. (Bruce to use of Pullis vs. Sims, *supra.*)

Had the reply of the plaintiff met the allegation made by the defendant, that the note had been altered, by confessing the alteration and avoiding it by the averment of ratification, an entirely different question would have been presented. But even then, in order to have the point discussed here, it would be necessary to ask appropriate instructions thereon. No instructions, however, were asked on this point by either party, so that if it had been put in issue by the pleadings, and evidence in conformity to the issue thus made, offered, still we could not consider it as the attention of the trial court was not called to the matter by requesting proper instructions covering the point. In no event, therefore, can plaintiff's objection to defendant's third instruction be regarded as tenable on the score of omitting the element of ratification. Nor can the instruction be held obnoxious to the charge that it misconceives the law as to the burden of proof. When the defendant had introduced testimony tending to show that the notes sued on had been, after issue and without his authority, altered in the particular referred to in the answer, the burden was thereby shifted upon the plaintiff to prove that the interest clauses were inserted with his authority. Nothing can be plainer than this.

We pass now to the consideration of the defendant's 1st and 2d instructions. As they are alike they will be considered together. They briefly assert the generally correct doctrine, that the unauthorized alteration of the notes in suit rendered them void, whether such alteration was made with or without the plaintiff's knowledge.

It is true there is a certain class of cases, where a party to a negotiable instrument permits it to be so loosely drawn as to render the addition of words enlarging his liability a matter of comparative ease; and such instrument is negotiated before maturity, to an innocent purchaser for value; the maker will be held bound by the alteration, although fraudulently made, if made in such a manner as not to place a man of ordinary prudence on the alert; as for instance, where the blank for the sum to be inserted is not completely filled by the sum there inserted, but space is left for the easy addition of other words, in a manner not provoking attention. This rule prevails in accordance with the maxim, a sound one alike in ethics as in law: "that where one of two innocent parties must suffer, that party must be the sufferer who gave occasion to the commission of the wrong." (Trigg vs. Taylor, *supra*.)

But manifestly that is not this case. Here, there was, as before stated, no blank left unfilled; unless that can be termed a blank which afforded sufficient space in which to interline other words. And besides, the words thus interlined were written, as before seen, in ink of a different color from that employed elsewhere in the body of the notes; and nothing, it would seem, but an entire disregard of the dictates of ordinary prudence could have induced the purchase of the paper in suit: so that, even if it be true that the notes were altered prior to their purchase by the bank, this cannot affect the question. The notes, on their face bore such indications as should have excited suspicion and provoked inquiry, (Horton vs. Bayne, 52 Mo., 531) and this in legal contemplation is tantamount to actual knowledge.

The doctrine that any alteration, however skillfully made, would avoid a note even in the hands of an innocent holder, was at one time asserted in this court. And so far was it pushed, that where the printed form of a note was duly filled, except that blanks were left for the rate of interest and the time when it was to accrue, and those blanks were, contrary to agreement, filled by inserting the words "ten," and "date,"

but not in a manner to indicate any alteration, it was held that this avoided the note even in the hands of an innocent indorsee before maturity, and for value. That doctrine was announced in Washington Savings Bank vs. Ecky (51 Mo., 272.) It was a twin conception with that of Briggs vs. Ewart (51 Mo., 245), and as that case, which maintained a theory analogous to that of Washington Savings Bank vs. Ecky, was overruled in the recent one of Shirts vs. Overjohn (60 Mo., 305) which adhered to the principle of the maxim above quoted, the case of Washington Savings Bank vs. Ecky may be regarded as substantially repudiated, as indeed it ought to be, since it seriously endangers, if it does not obliterate the rule respecting the negotiability of commercial paper.

Having considered the propriety of the instructions given on behalf of the defendant, we will now briefly examine the principles asserted in the instructions asked by, but refused to, the plaintiff. It is entirely unnecessary to encumber this opinion by copying them at length. Many of them, though perhaps otherwise unobjectionable, were guilty of the transparent fault, so often condemned by this court, of commenting on the evidence, *ex. gr.*, selecting certain portions thereof, and informing the jury that the portion referred to had a tendency to establish a controverted point. Others of them were erroneous as asserting that Armstrong would be bound notwithstanding the notes were altered without his knowledge or consent, provided such alterations were not fraudulently made, or made for the purpose of changing the legal effect of the notes.

In the case of Evans vs. Foreman, *supra*, in considering this point, we remarked : "It has not been intended  *  *  * to give any intimation as to what the effect would be, were the alteration purely accidental, or the result of a stranger's spoliation. But it is designed distinctly to assert that if mistakes do arise in the preparation of written instruments, aside from the consent of all parties interested to the needed correction, the courts of the country alone can furnish

adequate redress; and that we will not give sanction or coun-. tenance to the attempts of an interested party to effect by his own hand the desired reformation; as an honest blunder of this sort, if upheld in one instance, might necessitate sanctioning an alteration having that appearance, but which, from the infirmity of human testimony, might be grossly otherwise."

The above quotation, together with previous remarks, disposes of all questions necessary to be discussed in relation to the propriety of the refusal of the plaintiff's instructions, as all of the chief matters embraced therein, have been either directly or incidentally passed upon, and we have been unable to discover any error in such refusal.

The fourth error complained of, is that the testimony of Armstrong and of Osborne was inadmissible to show that alteration had been made in the notes, on the ground that a party to negotiable paper shall not be permitted to invalidate it. As to Osborne this objection is clearly not tenable; and as to Armstrong, although a party to the instrument, no objection was made to his introduction as a witness, but objections were only made as to certain questions which were propounded to him, after he came on the stand. But as the grounds of these objections were not stated, the overruling of the objections cannot, under our rulings, be assigned for error. It is, therefore, wholly unnecessary to discuss the question whether Armstrong should have been admitted to testify on the point referred to.

Holding the foregoing views, we find that there is no error in the record, and the judgment should be affirmed. Judge Vories absent. The other judges concur.