THE KNOXVILLE NATIONAL BANK v. CLARK.

THE SAME v. TECKEL.

THE SAME v. MILLS.

1. **Promissory Note**: ALTERATION. A negotiable note for ten dollars was executed and delivered with a blank preceding the amount, and another blank to be filled with the name of place of payment. Afterward the words and figures were so changed as to make the amount one hundred and ten dollars, and a place of payment was inserted. There was nothing in the appearance of the note to excite suspicion, and it was taken by plaintiff after alteration, before maturity, for a valuable consideration and without notice of the alteration: *Held*, that no recovery could be had thereon.

*Appeal from Marion District Court.*

THURSDAY, JUNE 5.

THE facts in the foregoing actions being identical they have been submitted on the abstract in the first case. The plaintiff seeks to recover on a negotiable promissory note, executed by the defendant, which was assigned to the plaintiff before maturity. The defendant alleged the note had been altered after its execution. There was a trial to the court, judgment for the plaintiff, and defendant appeals.

*Stone & Ayres,* for appellant.

*Anderson & Briggs,* for appellee.

SEEVERS, J.—When the note was presented to the defendant and executed by him it contained blank spaces, and was as follows:

"$ 10.                        FRANKLIN, March 16, 1877.

"Six months after date I promise to pay to the order of C. H. Huff ——— ten dollars, at the ——— bank of ———. Value received, with interest at ten per cent per annum.

"JOHN CLARK.

"———, witness."

When the note was assigned to the plaintiff it was in all respects like the foregoing, except that "one hundred and" had been written before "ten," and the figure 1 written after the dollar mark so that it appeared to be a note for one hundred and ten dollars. The words "Knoxville Nat." had been written in the blank which preceded "bank," and "Knoxville, Iowa," in the blank following the word "of." The bank had no knowledge of these alterations, and there was nothing on the face of the note tending to show them. It was assigned to the bank by a person purporting to be the payee thereof. About a year previous to this transaction the plaintiff had purchased negotiable paper of C. H. Huff, exe-

cuted by the citizens of Marion county, which had been paid without question.

Before signing the note the defendant asked the persons to whom it was delivered why they did not fill up the blanks so as to make it payable at one of the Knoxville banks? The reply was they did not wish to do so because an agent of the payee would come around and collect the note when it became due. The sole question is whether, under the facts above stated, the plaintiff is entitled to recover.

There is a class of cases holding that the payee has authority to fill a blank in a promissory note left for the purpose of designating the place of payment (*Reddich v. Doll*, 54 N. Y., 234); and there is another class which holds, where a negotiable promissory note is intrusted to another for use, that there exists an implied authority to fill blanks therein.

In the note in the present case the blank for the amount was partly filled, and the serious question is whether the maker is responsible for an unauthorized alteration or addition thereto. As to this question there is a conflict in the authorities. The case of *Young v. Grote*, 4 Bing., 253, was decided in England in 1827. The facts were that the plaintiff signed some blank checks and left them with his wife, with directions to have the same filled up as his business might require during his absence. Mrs. Young delivered one of the checks to her husband's clerk and directed him to fill it up for fifty pounds and some shillings. This he did in her presence, and she desired him to get it cashed. Before doing so the clerk, without authority, altered the check by writing "three hundred and" before "fifty," so that the check, on its face, was for three hundred and fifty pounds and some shillings, and such amount was paid by the banker. The action was between him and Young, his customer. It was held the latter was liable for the amount so paid on the ground the plaintiff had been negligent in so drawing the check as to allow the alteration to be made without discovery. It is not too strong an expression to say that this decision has been doubted and shaken

as an authority by more than one subsequent decision of the English courts. Especially is this so as to the ground upon which the ruling is based.

The most recent case to our knowledge is that of *Baxendale v. Bennett*, decided by the English Court of Appeal. It will be found in the *Albany Law Journal*, Vol. 19, No. 19, p. 372. The facts were, the defendant, at the request of Holmes, accepted a draft as an accommodation bill at a time when a drawer's name was not signed thereto, and sent it to Holmes, who, however, returned it to the defendant. At this time it had no drawer's name thereto. The defendant put it in an unlocked desk in his chambers, from where it was taken by some unknown person and came into the hands of the plaintiff as a *bona fide* holder for value. At this time the name of one Cartwright was signed to the draft as drawer.

The lower court found the bill had been stolen and was a forgery, but was of the opinion the defendant had by his negligence led to the bill being put into circulation, and as the plaintiff was an indorsee for value he was entitled to recover. But on appeal it was held otherwise, and that the negligence of the defendant would not justify a recovery. This case is in direct conflict with *Young v. Grote*, as to the question of negligence, and it was said the last named case must be regarded as shaken as authority by what is said in *Bank of Ireland v. Evans Charity Trustees*, 5 H. of L. Cases, 389. The case of *Worrall v. Gheen*, 39 Pa. St., 388, is identical with the case at bar except as hereafter indicated. "The fraud was so well executed that the appearance of the note was not such as to excite the suspicions of a man in ordinary business. *On inspection, a difference in the color of the ink with which the words 'one hundred and' were written may be perceived.*" The Italics are ours, and indicate the only distinction between the two cases. This, however, is a distinction without a difference, because the alteration was not such as to excite the suspicions of a man of ordinary business capacity. Such dis-

tinction is not alluded to by the court. *Young v. Grote*, however, is, and it is doubted.

The fact that there was a partly filled blank in which the additional amount could be written was held to make no difference, and it was said: "This fact shows carelessness, but it was not the carelessness of the indorser, but the forgery of the maker, that was the proximate cause that misled the holder."

There is no material difference in the facts between the case just cited and *Garrard v. Haddam*, 67 Pa. St., 82. In this case *Young v. Grote* is followed, and *Worrall v. Gheen* distinguished, because it was a case of "perceptible alteration;" and yet, as we have said, the ruling was not placed on the latter ground by the judges who at that time composed the court.

*Zimmerman v. Rote*, 75 Pa. St., 188, and *Brown v. Reed*, 79 Id., 370, are substantially alike. In one case the alteration consisted in cutting off a separate agreement, written on one end of the paper on which the note was written, and in the other the paper on which the maker supposed an agreement was written was so divided by cutting as to leave a negotiable promissory note. There was a recovery in both cases. They are not identical with the case at bar, and we are not prepared to say they may not be sustained upon some principle not applicable to it.

The facts in *Cornell v. Nebeker et al.*, 58 Ind., 425, are like those in *Zimmerman v. Rote*, and the decision is based thereon. No independent reasons are given, except, that "public policy demands such a line of judicial decision as will tend to give confidence" in negotiable paper "by securing the rights of the *bona fide* holder."

*Harvey v. Smith*, 55 Ill., 224, is based on *Young v. Grote*. *Leach v. Nichols*, Id., 274, and *Subel v. Vaughan*, 79 Ill., 257, are not applicable. In *Yocum v. Smith*, 63 Ill., 321, the plaintiff notified the defendant of the amount of the altered note when it became due. He made no objection thereto

until a suit was threatened some time afterward. The case may possibly be supported on the ground of a ratification. It is true it is not so placed.

Neither the facts nor the point determined in *Capital Bank v. Armstrong*, 62 Mo., 59, and *Iron Mountain Bank v. Murdock*, Id., 70, are such as to make them authorities in the case at bar.

In *Visher v. Webster*, 8 Cal., 109, the note, when executed, was complete in all respects except a blank for the rate of interest. This was afterward filled. All the court say is that "to fill a blank in a note is not an alteration."

In *Joseph v. National Bank*, 17 Kansas, 256, the note when indorsed contained a blank for the amount. It was agreed this should be filled with four hundred dollars. Instead of this, eight hundred dollars was written therein. This was a mere excess of authority. We have alluded to the principal authorities cited by counsel for the appellee, except two or more decisions of this court, which will be referred to hereafter.

On the other hand, *Wade v. Wittington*, 1 Allen, 561, and *Greenfield Savings Bank v. Stowell*, 123 Mass., 196, are on all fours with the case at bar, and it was there held the alteration rendered the notes void. The same ruling on the same state of facts was made in *Holmes v. Trumper*, 22 Mich., 427. See, also, *Bradley v. Holmes*, 37 Mich., 1. In principle there is no distinction between the foregoing and *Bruce v. Westcott*, 3 Barb., 374.

It was held in *Woodworth v. Bank of America*, 19 Johns., 391, that the addition of words designating a place of payment discharged an indorser. We infer, however, the addition was written on the margin of the note and not in an unfilled or partly filled blank.

The same ruling was made in *Nazro & Green v. Fuller & Patterson*, 24 Wend., 374. In this case the additional words were written at the end of the note, as it was when executed. The distinction between this case and *Reddich v. Doll*, before cited, is caused by the character of the blank. In the latter

case the word "at" immediately preceded the blank. The note in *McGarth v. Clark*, 56 N. Y., 34, had a similar blank to that in *Reddich v. Doll*. Not only was a place of payment written therein, but the words "with interest" added thereto. It was held the addition of the last words rendered the note void. In *Goodman v. Eastman*, 4 N. H., 455, Eastman signed the note as surety for Harford, the amount of the note being twenty dollars. Before it was delivered to the payee Harford so altered it that it became a note for one hundred and twenty dollars. It was held Eastman was not liable. Here the payee was an innocent holder for value.

In *Watterman v. Vose*, 43 Maine, 504, the alteration was made by the maker with the knowledge of the indorsee before the transfer. The surety was discharged. The knowledge of the indorsee was not referred to in the opinion.

In *Steel v. Wood*, 6 Wall., 80, the note when executed contained "September" without more as its date. This was stricken out and "October 11th" inserted. The alteration was apparent on the face of the note. Swayne, J., states the point to be decided as follows: "The state of the case relieves us from the necessity of considering upon whom rested the burden of proof, the nature of the presumption arising from the alteration apparent on the face of the paper, and whether the insertion of a day in a blank left after the month exonerates the maker, who has not assented to it." It was held there could not be a recovery on the note.

In *Angle v. N. W. M. Ins. Co.*, 92 U. S., 330, Clifford, J., says "that where a party to a negotiable instrument intrusts it to another for use as such, with blanks not filled up," there exists an implied authority to fill the blanks, but that such authority "would not authorize the person intrusted with the instrument to vary or alter the material terms of the instrument by erasing what was written or printed as part of the same, nor to pervert the scope and meaning of the same by filling the blanks with stipulations repugnant to

what was plainly and clearly expressed in the instrument before it was delivered."

It is insisted by the appellee that this court, in *Trustees v. Hill*, 12 Iowa, 462; *McDonald v. The Muscatine Nat. Bank*, 27 Iowa, 319, and *Rainbolt v. Eddy*, 34 Iowa, 440, has determined the question under consideration in accord with the ruling below. In the first case authority was given to fill the blank left for the amount. A greater sum than had been agreed was inserted. This was a mere excess of authority. In the second case the court found the blank instrument had been delivered for some *purpose*, and that the filling the blank so as to make a promissory note was a gross fraud. The maker was held liable. The court, negatively at least, concluded a forgery had not been committed. The case, therefore, is not authority in the case at bar, as it is agreed on all hands the alteration in the present case was a forgery. In the last case "ten pr ct inst" was "written in a blank left in the note when executed." This case may possibly be supported on the ground that there existed an implied authority to fill the blank, or on the ground it is put in the opinion. It is there said: "Since the defendant, by executing a note and delivering it with a blank in it for the insertion of the interest, and thereby placing it in the power of the payee to do a wrong, as between him and the plaintiff, a *bona fide* purchaser for value, he ought to suffer the loss therefrom." This case cannot be regarded as authority in the case at bar, because, in that case, the blank was wholly unfilled.

The question under consideration must be regarded as an open one in this State. The authorities cited by the appellee, and the whole doctrine on that side, rest on *Young v. Grote* as its foundation stone. Ever since that decision has been made there has been an apparent struggle to find some solid foundation upon which it could rest. In casting about for some principle on which it could be based several have, at various times, been suggested. They are—

1. That the plaintiff owed a duty to his banker, and their

peculiar relations justified the court in sustaining the payment made by the banker.

2.    The fact the check was written by the plaintiff's clerk, and intrusted to him to draw the money, and by whom the alteration was made, justified the decision.

We are not called upon to either affirm or deny the sufficiency of either of the foregoing reasons.

3.    That the plaintiff was estopped from showing the truth.    But this has been exploded in both England and this country.    The plaintiff had not done or omitted to do anything upon which an estoppel could be based, unless he owed a duty to his banker, and that is not applicable to the case at bar.    Besides what has been said it may be remarked the decision was not placed on the ground the plaintiff was estopped.

4.    Negligence of the drawer of the check in leaving a blank partly filled.    On this ground the court proceeded and the decision is based on the reasoning of the civil lawyers. But could it be anticipated that such negligence would cause another to commit a crime, and can it be said a person is negligent who does not anticipate and provide against the thousand ways through or by which crime is committed? Is it not requiring of the ordinary business man more diligence than can be maintained on principle, or is practicable, if he is required to protect and guard his business transactions, that he cannot be held liable for the criminal acts of another. If so, why should not the negligence of the owner of goods which are stolen excuse the *bona fide* purchaser?

Can it be fairly said that the negligence of the drawer of the check or maker of the note was the proximate cause of loss to the holder?    It seems to us the proximate cause of the loss is the forgery, and this the maker had no reason to anticipate.

5.    In some of the cases following *Young v. Grote* the rule has been invoked that, when one of two innocent persons must suffer by the wrongful act of another, he must suffer who

placed it in the power of such third person to do the wrong. It seems to us such rule can have no application to this class of cases. It has never, we think, been carried to the extent of making one person civilly liable for the crime of another, and, on principle, we think it cannot be. As far as courts have gone in this direction is to make one person civilly liable for the fraudulent acts of another, whereby some third person has sustained a loss, the fraud being made possible by the acts and conduct or negligence of the person charged. *Douglass v. Matting*, 29 Iowa, 498, is of this character.

Lastly, it has been said the free interchange of negotiable paper requires the establishment of the rule adopted by the court below. At the present day negotiable paper is not ordinarily freely received from unknown persons. Forgeries, however, are not confined to such. But the necessities of trade and commerce do not require the law to be so construed as to compel a person to perform a contract he never made, and which it is proposed to fasten on him because some one has committed a forgery or other crime.

It should be borne in mind that much negotiable paper is executed by parties who have not in any just sense ordinary business capacity. Relying on this fact, advantages are taken which courts are asked to sustain because of the rules long established for the protection of good-faith holders of negotiable paper. We can but think courts have gone as far in this direction as can be safely done. We are not prepared to say any steps backward should be taken, but no such advance should be taken as to validate such paper as that in the case at bar. The interests of legitimate trade do not require that this should be done.

Believing the weight of modern authority is opposed to the rule adopted by the District Court, and that upon principle it cannot be sustained, the judgment must be

REVERSED.