JEREMIAH HAGAR, Respondent, v. GEORGE GRAVES, Appellant.

St. Louis Court of Appeals, March 22, 1887.

1. PARTNERSHIP—TRANSFER OF PROPERTY—FRAUD.—A partner has no right to transfer partnership property in payment of his individual liability, and the transferee thereof, with knowledge, is guilty of fraud.

2. ————— PRACTICE—PARTIES TO ACTION.—In an action by the defrauded co-partner against the fraudulent transferee of the property, the non-joinder of the colluding partner, as a party plaintiff, can be taken advantage of only by demurrer or answer.

3. ————— Semble, that in such a case it is not necessary to join the colluding partner, as a party plaintiff, in an action against the fraudulent transferee of the property.

4. PRACTICE.—The technical incorrectness of the theory upon which a cause was tried will not warrant a reversal, where the petition is

not fatally defective, where the evidence was admitted without objection, and where the verdict is just and fair.

APPEAL from the Newton County Circuit Court, M. G. McGREGOR, Judge.

*Affirmed.*

JOHN W. NORTH, for the appellant: The cause of action stated is trespass: *i. e.*, an unlawful and wrongful taking and conversion. The testimony shows a sale and delivery, by one of the partners, of partnership property. *Browning v. Walbrun,* 45 Mo. 477 : *Buffington v. Railroad,* 64 Mo. 246 ; *Carson v. Cummings,* 69 Mo. 325 ; *Deickman v. McCormick,* 24 Mo. 596.

ROMBAUER, J., delivered the opinion of the court.

This is an action of trespass, to recover damages laid at five hundred dollars, for the wrongful conversion of the plaintiff's property. Wimpey, North, and Graves were sued as joint trespassers, but the jury found a verdict in favor of the defendants, North and Wimpey, and against the defendant, Graves, assessing the plaintiff's damages at $346.50, for which amount judgment was entered in favor of the plaintiff against Graves, who appeals.

Concerning the facts in the case, there is no substantial dispute. In the summer of 1883, Wimpey had a country store at Twin Springs, Missouri, which contained goods of the invoice value of three hundred and eleven dollars. For these goods he was indebted to the Newton County Coöperative Association, of which the defendant, Graves, was the manager. The plaintiff, desiring to associate in business with Wimpey, they both called upon Graves, and informed him of the fact. Graves said he had no objection, but that Wimpey owed the Association about three hundred dollars, for the goods on hand. Nothing was said by either party, at any time, about the new firm assuming that debt. At the same time the

plaintiff bought of the Association, through Graves, three hundred dollars' worth of goods, and paid for them with his own means. These goods were put into the co-partnership store of Wimpey & Hagar, the firm thus formed.

The plaintiff and the defendant, as such firm, continued to trade with Graves until about October 1, 1883, the date of the trespass complained of. At that time the original debt of Wimpey was still wholly unpaid, and the firm had also contracted a new debt for goods with Graves, not exceeding one hundred dollars. The plaintiff, becoming dissatisfied, insisted on a dissolution of the co-partnership, and a division of the property, each party to pay his own debts, and some preliminary steps, looking to that end, were taken with the assistance of Graves, but, before the division was completed, Wimpey executed a bill of sale, in the firm name of Wimpey & Hagar, to Graves, conveying to him all the partnership goods, and assigned to him all the accounts of the firm, and delivered to him the books of the firm, for a consideration consisting of his own debt, and of the debt of Wimpey & Hagar, to Graves, or the Association. Graves took possession of the property, and removed it, converting it to his own use, and that is the trespass complained of.

The original petition stated a joint ownership, by Wimpey & Hagar, of the property in controversy, stating its value at seven hundred and thirty-eight dollars, and claimed that the individual interest of the plaintiff in such property was of the value of five hundred and fifty dollars, and further stated an unlawful conversion of the plaintiff's interest in the property by the defendant, to the plaintiff's damage in the sum of five hundred dollars.

The amended petition, on which the cause was tried, stated a partnership between Wimpey and Hagar, a dissolution of such partnership, and a division of the goods and property, prior to the date of the trespass complained of, and a conversion by the defendant of the plaintiff's

share of the property, to his damage in the sum of five hundred dollars.

The answer contains a general denial, but admits that the property was transferred to Graves by Wimpey, in the partnership name of Wimpey and Hagar, claiming it was made in payment of a firm indebtedness, in the partnership name, and was effectual to carry the title of both partners in the property to Graves.

It may be remarked that all the evidence in the case, by either party, was offered and received without objection, and that the only controversy between the parties, on the trial of the cause in the lower court, as appears by the pleadings, evidence, and instructions given and refused, was the lawfulness of the transfer of the property to the defendant, Graves, as against the plaintiff, Hagar.

It may be further remarked, that no formal assignment of errors has been made in this court by the appellant, nor has any such assignment been made in his brief. We only gather, from a discussion of the subject in his printed argument, that he relies for a reversal of the judgment upon alleged errors committed by the court in its charge to the jury, and upon the further fact, that, under the facts of the case, an action at law will not lie, and the verdict is unsupported by the evidence.

There was evidence tending to show that the stock in trade was worth seven hundred dollars or more, and that the face value of the assigned accounts was three hundred dollars and more, making the plaintiff's one-half interest in the property, subject to the debts of the firm, equal to five hundred dollars. The firm's debt to Graves did not exceed one hundred dollars, and no other firm debts are shown. The absolute transfer of the property to Graves and his appropriation of it are conceded. The consideration of that transfer, as far as the plaintiff is concerned, is one hundred dollars. There is no dispute but the transfer was made without his con-

sent. The verdict of $346.50 for the plaintiff is, therefore, fully warranted in any view of the facts, and the only question for our consideration is, shall that verdict be disturbed when the jury have confessedly reached a proper result, simply by reason of technical objections to the mode in which that result was arrived at.

It may be conceded that there is no evidence in the case that the partnership between Wimpey and Hagar was ever dissolved. That the individual rights of a co-partner in partnership property are, as a general rule, determinable only by proceedings in equity, may also be conceded. The reason of that rule is, that the individual and exclusive rights of a co-partner in firm property are equal only to his share in the residuum, after the satisfaction of partnership obligations, and the superior equities of his co-partner. The determination of such rights necessitates the taking of a complicated account, and the adjustment of nice equities, subjects with which equity alone is competent to deal.

But this rule is by no means universal, nor does it necessarily, in all cases, preclude a partner from maintaining an action at law for the recovery of partnership property from a stranger, to whom it has been transferred by his co-partner, in fraud of the plaintiff's rights. On the contrary, such an action has been sustained when the suit was brought by the defrauded partner in his own name without joining his co-partner, both in this state ( *Cayton v. Hardy*, 27 Mo. 536; *Croughton v. Forrest*, 17 Mo. 131); and in other jurisdictions. Parsons on Part. 339, 340.

Nor is the appellant's argument tenable, that the transfer, by Wimpey to Graves, of the partnership property, under the circumstances, conveyed a good title to Graves, and, therefore, the possession of the latter was neither wrongful nor unlawful. Argument on this question is precluded by the reasoning of the court in *Ackley v. Staehlin* (56 Mo. 558, 561), where the language of

Judge Story, in *Rogers v. Bachelor* (12 Peters, 221), is approvingly quoted, that one knowingly taking the property of the firm, in payment of his claim against one of the members, "is guilty of gross fraud, not only in morals, but in law." See, also, *Flanagan v. Alexander*, 50 Mo. 50; *Phelps v. McNeely*, 66 Mo. 558.

It has been held in some jurisdictions, that the non-joinder, by a party plaintiff, of the colluding partner with the partner defrauded, in such a suit, was good ground for non-suit. *Dob v. Halsey*, 12 Johns. 36, 39. But that rule, even if correct, can not hold good under our practice act, by which the objection of such non-joinder is waived, unless raised by demurrer or answer. Rev. Stat. sect. 3519; *Michael v. Insurance Co.*, 17 Mo. App. 23.

The question was put to the jury on the theory presented by the pleadings and proof. The question thus presented was whether the possession of Graves, under a sale by Wimpey, was lawful as against the plaintiff. It is too late to complain here that the case should have been put to the jury on another theory. *Bank v. Armstrong*, 62 Mo. 65. The jury have reached a result, which, upon the conceded facts, is just and fair. "The ends of justice would not be subserved by granting a new trial, for, upon an amended pleading, the judgment (as far as it determines the respective rights of the parties) must be the same."

The judgment is affirmed. All the judges concur.