### FLANNAGAN *v.* NATIONAL UNION BANK OF DOVER.

*(City Court of New York, Trial Term.  November, 1888.)*

NEGOTIABLE INSTRUMENTS—FRAUDULENT ALTERATION—BONA FIDE HOLDER.

    F. obtained from defendant a draft on another bank for $8.50. This he fraudulently raised by adding a "y" to the written "eight," and a cipher to the figure 8. In this condition plaintiff purchased it at its apparent face value, in good faith. The drawee refused to pay it. *Held*, that plaintiff could not recover from defendant even the amount for which the draft was originally drawn.[1]

On April 21, 1883, one M. R. Ford applied to and obtained from the defendant, the National Union Bank of Dover, N. J., a draft on the National Broadway Bank for "eight 50-100 dollars." Ford, or some one in his interest, raised the "eight" to "eighty," thereby making it appear to be a draft for "eighty 50-100 dollars," and then induced the plaintiff, William W. Flannagan, to give him $80.50 for it; which he did in good faith, believing the draft to have been originally drawn for that amount. The alteration was easily made, as it simply required the insertion of the letter "y" after the "eight," and an "0" after the "8" in figures, and is, in consequence, hardly perceptible. Upon presentation at the National Broadway Bank, the paying teller suspected that an alteration had been made, and declined to honor the draft. The plaintiff now seeks to recover the $80.50 from the defendant as the drawer of the draft.

*Reynolds & Harrison*, for plaintiff.  *Geo. C. Comstock*, for defendant.

---

    [1] On the general subject of the unauthorized alteration of written instruments, see Evans v. Lawton, 34 Fed. Rep. 233, and exhaustive note; Martin v. Tuttle, (Me.) 14 Atl. Rep. 207, and note.

McAdam, C. J., (*after stating the facts as above.*)  In determining which of two innocent persons, the plaintiff or defendant, must suffer by the fraudulent act of Ford, the payee of the draft, it is proper to commence with the rule that the duty of ascertaining the genuineness of all parts of a check or draft (except the signature of the drawer) devolves upon the holder (*Bank* v. *Bank*, 3 Wkly. Dig. 583,) and that the drawee of a bill is presumed to know only the handwriting of the drawer, and this he cannot, after payment, dispute, to the prejudice of the holder to whom the payment has been made, (*Bank of Commerce* v. *Union Bank*, 3 N. Y. 230.)  The drawee by payment guaranties nothing, however, but the genuineness of the drawer's signature; so that if the drawee of the draft in suit had paid it to the plaintiff upon presentation, without knowledge of the alteration, the amount could have been recovered back as money paid to him by mistake, (*Bank of Commerce* v. *Union Bank, supra; Bank* v. *Bank*, 59 N. Y. 67; *White* v. *Bank*, 64 N. Y 316;) and this upon the theory that the holder is responsible for the genuineness of all parts of the check except the signature, and that if he obtains from the bank upon which it was drawn more than the draft or check originally called for he must return the excess, for the bank can charge its depositor only with the amount for which the check was originally drawn. Now, to the issue.  The defendant is sued upon an $80.50 check.  It drew no such check.  The unauthorized alteration of the instrument, by raising the amount from $8.50 to $80.50, amounts in law to a forgery, (Pen. Code, § 520;) and the defendant, although originally liable on it for $8.50, is in consequence discharged from all liability thereon, (Story, Prom. Notes, § 408; 2 Daniel, Neg. Inst. § 1410.)  In reviewing the cases, the distinction must be observed between a note or draft signed in blank, which carries with it the implied power of filling up the blanks with appropriate words and figures, (*Harris* v. *Berger*, 15 N. Y. St. Rep. 389,) and an altered note or check,—that is, one changed after it has once been legally drawn up and delivered,—for an unauthorized alteration in a completed instrument vitiates it entirely, even in the hands of a *bona fide* holder for value, (*Bank* v. *Stowell*, 123 Mass. 196; *Holmes* v. *Trumper*, 22 Mich. 427; *Bank* v. *Clark*, 51 Iowa, 264, 1 N. W. Rep. 491; *Goodman* v. *Eastman*, 4 N. H. 455; *McGrath* v. *Clark*, 56 N. Y 34; *Taddiken* v. *Cantrell*, 69 N. Y. 597; *Crawford* v. *Bank*, 100 N. Y. 50, 2 N. E. Rep. 881; *Weyerhauser* v. *Dun*, 100 N. Y. 150, 2 N. E. Rep. 274; Story and Daniels, Prom. Notes, *supra*.)  The plaintiff brings his action upon the theory that, as an innocent holder of the draft, he is entitled to recover the amount thereof from the defendant on the ground of negligence; and he cites the case of *Young* v. *Grote*, 4 Bing. 253, as authority for his position.  In that case it appeared that a customer of a banker delivered to his wife a number of printed checks signed by himself, but with blanks for the sums, requesting his wife to fill the blanks up according to the exigency of his business.  She caused one to be filled up with the words "fifty pounds, two shillings;" the "fifty" being commenced with a small letter and placed in the middle of a line.  The figures "£50.25" were also placed at a considerable distance from the printed "£."  In this state she delivered the check to her husband's clerk to receive the amount; whereupon he inserted at the beginning of the line in which the word "fifty" was written the words "three hundred and," and the figure "3" between "£" and the "50."  The bankers having paid the £350, 25s., it was held that the loss must fall on the customer.  The court put its decision on the ground that Young's wife (his agent) was ignorant of business habits, and that she had imprudently intrusted the check to a clerk of her husband's, who was not trustworthy; that the manner of filling up the check by the wife was unbusiness-like, and showed incapacity; and that the defendant's negligence in signing the check in blank, and intrusting it to an incompetent person to fill up, coupled with the dishonesty of the defendant's clerk, who drew the cash

on it and absconded, were such acts of negligence, imputable to the drawer, as prevented him from recovering back from his bank the money it had in good faith paid to his chosen agent. That case was decided upon its own peculiar characteristics, and cannot be extended beyond them. It was not designed to alter the rule before referred to; for it carefully distinguishes and inferentially approves of *Hall* v. *Fuller*, 5 Barn. & C. 750, where a check which was drawn by a customer upon his banker, for a sum of money described in the body of the check, having afterwards been altered by the holder, who substituted a larger sum for that mentioned in the check, but in such a manner that no person in the ordinary course of business could observe it, and the banker paid the larger sum, the court held that he could not charge the customer for anything beyond the sum for which the check was originally drawn.

Notwithstanding this explicit recognition of the rule, the decision in *Young* v. *Grote, supra,* has in one or more instances been carried beyond its scope and purpose. Thus, in *Garrard* v. *Haddan,* 67 Pa. St. 82, the court, upon the authority of that case, held that where the maker of a note left a blank between the amount "one hundred" and the word "dollars" following, and "fifty" was inserted between them in the same handwriting, that the holder without notice could recover from the maker the entire amount. The court added, however, that, where the alteration of the instrument is apparent on its face, the *bona fide* holder cannot recover; otherwise he can. This attempted distinction is without merit; for it amounts practically to this: that if the forger does his work so skillfully that the alteration is concealed, to an extent sufficient to disarm the suspicions of a purchaser, the maker is liable, otherwise not; and thus the ability of the forger is made the test of liability. No sound principle supports such a doctrine. In *Bank* v. *Clark,* 51 Iowa, 264, 1 N. W. Rep. 491, the attempted distinction was disapproved; and, although the alteration of a note in that case from $10 to $110 was not perceptible, the court held that the *bona fide* holder could not recover. So in *Goodman* v. *Eastman,* 4 N. H. 455, where the instrument was altered from $20 to $120, the court held that the innocent holder must fail in his action. Again, in *Hall* v. *Fuller,* 5 Barn. & C. 750, the alteration was made in such a manner that no person in the ordinary course of business could observe it, and yet it was held that the maker was not liable for the alteration. The present case differs essentially from *Young* v. *Grote, supra,* in this: Ford, who made the alteration, was not an employe of the defendant; the draft was not signed in blank; it was a completed obligation when it left the defendant, the words having been first written in by a competent person. The forgery by Ford was therefore the proximate cause that misled the plaintiff, and not any act or omission of the defendant. No open blanks were filled in by Ford, except by adding the figure "0" to the numerals at the bottom of the check. The main offense consisted in altering the word "eight" by adding "y," and making it read "eighty"—a change that no ordinary degree of diligence can prevent an evil-disposed person from making in any eight-dollar check. True, the alterations made, being simple, are not readily observable, yet any one whose attention is attracted to the figures can easily detect the change. *Young* v. *Grote, supra,* has been properly limited, by subsequent decisions, so that it applies only to the peculiar circumstances disclosed in the case, (*Bank* v. *Evans,* 5 H. L. Cas. 389; *Bank* v. *Stowell,* 123 Mass. 199; *Bank* v. *Clark,* 51 Iowa, 264, 1 N. W. Rep. 491,) and is not authority for holding the defendant liable on the facts established here. The theory that a party who makes and issues commercial paper, properly and carefully drawn to express the liability which he intends to assume, is chargeable with negligence, on account of the criminal act of another in altering it after its issue, would render him a warrantor against such acts, and is repugnant to justice and reason. RUGER, C. J., in *Crawford* v. *Bank,* 100 N. Y. 55, 2 N. E. Rep. 881. The case

just cited also holds that the question of negligence cannot arise unless the depositor has, in drawing his draft, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of the fraud by those into whose hands the draft may come. The wrong in this case, as before remarked, consisted, not so much in filling up a blank left open, but in the criminal alteration of the word "eight" into "eighty;" without which the plaintiff could not have been deceived, and for which deception the defendant is in no way answerable, either on the theory of negligence, estoppel, agency, or any other known principle. The defendant was not bound to anticipate that a criminal alteration of its draft would be made, nor is it bound to indemnify the plaintiff because it has been made. The plaintiff knew fully as well as the defendant that such criminal acts are possible, and should have exercised reasonable diligence to guard against them. He had the altered draft before him, with the means of detection in his power, if he had chosen to exert them before parting with his money; and as the court said in *Worrall* v. *Ghee*, 39 Pa. St. 396: "We know of no way of saving purchasers of negotiable paper from the necessity and the consequences of relying on the character of the man they buy from, if they do not take the trouble of inquiring of the original parties." The defendant had no means of discovering the alteration until the draft was returned to its banking-house, after the fraud had been consummated. The plaintiff certainly had the more favorable opportunity of detecting the wrong, and of apprehending the wrong-doer. To hold that the defendant's negligence caused the plaintiff to part with his money would be to impute the act of the forger to the defendant as its act, and to make banks generally liable to innocent purchasers of altered drafts or bills, without requiring them to exercise diligence to avoid loss. Such a result would change the elementary rule that the duty of ascertaining the genuineness of all parts of a check, note, or draft devolves on the holder; and would reverse the settled principle that, where an instrument has been once effectually annulled by forged alterations, it cannot receive vitality and life by mere transfer to an innocent purchaser. The old principles must remain unchanged, notwithstanding this contention. Except in cases where negotiable paper is signed in blank, or where there are a combination of circumstances establishing negligence, as in *Young* v. *Grote, supra*, the true rule applicable is *caveat emptor;* and, if the purchaser does not ascertain the facts which inquiry would have made known to him, it must be held that he has himself chosen to accept all risks incident to his purchase. The plaintiff is thus driven back to a case where a material alteration in an executed contract, fully completed, has been made by one of the parties, without the knowledge or consent of the other, and recovery is sought on such altered contract by a person claiming title through the party committing the forgery. The law will not permit a recovery under such circumstances. *Vide* cases before cited; *Nazro* v. *Fuller*, 24 Wend. 374; *Bruce* v. *Westcott*, 3 Barb. 374; *Chappell* v. *Spencer*, 23 Barb. 587; *Hardy* v *Norton*, 66 Barb. 534; *Reeves* v. *Pierson*, 23 Hun, 185; *Page* v. *Morrel*, 3 Abb. Dec. 433, 17 Amer. Rep. 102n. The difficulty in this class of cases is that the plaintiff, to recover, is bound to prove that the defendant made the contract sued upon; and, if it has been altered without the consent of the obligor, it ceases to be his contract, for there can be no valid agreement without the consent and against the will of the party sought to be charged. "A *bona fide* holder of commercial paper for value, and before maturity," said the court in *Whitney* v. *Snyder*, 2 Lans. 478, "is protected in many cases against defenses which are perfectly available as between the original parties; such as that the signature was obtained by false and fraudulent representations; that the paper has been diverted; that a blank bill or acceptance has been filled up for a greater amount than the party to whom it was delivered was authorized to insert, etc. But in all these cases the party intended to sign and put in circulation the instrument

as a negotiable security. Where this is the case, he is bound to know that he is furnishing the means whereby third persons may be deceived, and innocently led to part with their property, on the faith of his signature, and in ignorance of the true state of facts. But, while this is a rule of great convenience and propriety, there are, and must be, some limits to its application,—some defenses as to which even a *bona fide* purchaser purchases at his peril." In the present instance Ford was clothed with no authority whatever by the defendant; it confided nothing to him; and he had no more right to alter the completely filled up draft which he purchased from it than he would have had to alter one of its bank-bills, by making it a $50 instead of a $5, or $100 instead of a $10; for the draft given to him was as completely an executed contract when he received it as the promise to pay contained in the ordinary bank-notes issued by a banking institution. For these reasons there must be judgment for the defendant.