BENJAMIN BROWN & others *vs.* CHARLES A. PHELPS.

A broker, employed to purchase stock, contracted for it in his own name with J. S., who owned it at the time but had made a prior contract for its sale. The employer, for groundless reasons, repudiated the contract; but the broker, having no knowledge of or reason to suspect the prior sale by J. S., paid for the stock when tendered to him. *Held*, that the Gen. Sts. *c.* 105, § 6, making void contracts for the sale of stocks not owned by the seller, did not debar the broker from recovering from his employer the amount so paid.

CONTRACT by stockbrokers to recover the price paid for three hundred shares of stock in the Hancock Mining Company, purchased by them for the defendant from Aaron W. Spencer. The case was submitted to the judgment of the superior court, and, on appeal, of this court, upon agreed facts, the material part of which is stated in the opinion.

*R. M. Morse, Jr.*, for the plaintiffs.

*H. D. Hyde*, for the defendant.

CHAPMAN, C. J. The plaintiffs acted as agents of the defendant in contracting for the purchase of the stocks which are the

subject of controversy, and the question presented is, whether they made contracts which they were justified in fulfilling after the defendant's refusal to adopt them. If they were void contracts, it is because they were in contravention of the Gen. Sts. *c.* 105, § 6, making void all contracts for the sale of stocks, unless the party contracting to sell or transfer the same is, at the time of making the contract, the owner or assignee thereof, or authorized by the owner or assignee, or his agent, to sell or transfer the certificate or other evidence of stock.

The plaintiffs contracted with Spencer on November 27, 1867, for the purchase of 100 shares in the Hancock Mining Company, to be delivered in two months, at buyer's option. Spencer then had 3550 shares. He had received 300 of them from one Sheafe as collateral security for a loan. But the loan was unpaid, and it was agreed that Spencer should have the absolute right to dispose of the shares, and, when the loan should be paid, he was to return the same or other shares. His contract to sell shares thus held by him would not be a violation of the statute, because he had a right to sell them. But he was under a contract to deliver 300 shares to one Farley and 3150 shares to other persons, on time, at buyer's option, so that he had only 100 shares remaining which he could legally contract to sell to the plaintiff. But this was sufficient to make the first contract legal. On the 29th of November he purchased 100 shares more, and on the 30th he contracted to sell 100 shares to the plaintiffs. This contract appears to be legal also, as he owned the shares. But on December 2 he contracted to sell the plaintiffs 100 shares more; and at that time he had no shares that he had not contracted to sell, and did not have them till December 10, when he became possessed of a large number.

The defendant contends that the case of *Stebbins* v. *Leowolf*, 3 Cush. 137, is a decisive authority against the plaintiffs' claim in respect to these shares. That case related to a statute of the state of New York; but our own statute is substantially like it, and must receive the same construction. In that case, the plaintiff had contracted to purchase the stocks, as agent of the defendant; but he was conversant of all the facts, and of the

objections to the validity of the contract entered into by him, and volunteered to pay the claims of the vendors of the stock without any legal liability on his part. Under these circumstances, the court say that he must be taken to have paid the money in his own wrong, if the contract he entered into was in fact illegal. And they held that the burden of proof was on him to show a legal contract in order to make a *primâ facie* case. The decision was in conformity with the elementary law of agency, according to which, if an agent knowingly pays money on an illegal contract after it has been repudiated by his principal, he cannot thereby bind his principal. But in the present case no such knowledge of facts appears in the agreed statement. The plaintiffs contracted to purchase the shares of one who actually owned them. They were not bound to presume that he had previously contracted to sell them; and there was nothing to put them on inquiry, nor does it appear that they had any means of ascertaining, by the use of reasonable diligence, what private contracts Spencer had made with other persons. Moreover, they gave the defendant notice of what they had done for him. He at first sanctioned the contracts, and afterwards refused to perform all the contracts alike; principally because he could not raise the money to pay for the stocks; and also because of an allegation of fraud which appears to have been groundless. The tendency of this was to put the plaintiffs off their guard in respect to the defence now set up. The plaintiffs were bound only to use reasonable diligence in ascertaining whether there was any defect in the contract. Story on Agency, §§ 183, 186. And they were not bound to subject themselves to litigation on the defendant's behalf, when they had no notice, or even any ground of suspicion, that Spencer had made a prior contract to sell the shares. They used all the diligence that could reasonably be required of them in transacting the defendant's business, and are entitled to recover the money they paid for him. 　　　　　　　　*Judgment for the plaintiffs.*