84  349
85  351

---

JOSEPH BRECKENRIDGE *vs.* MARY A. H. LEWIS.

Cumberland.   Opinion March 23, 1892.

*Promissory Note.   Innocent Holder.   Accommodation Indorser.   Agency.*

One, who intrusts his signature to another for commercial use, that is, to have some business obligation written over it, becomes holden upon a negotiable promissory note fraudulently so written by the person so intrusted with it, and negotiated to an innocent holder.

An accommodation indorser of such note, without notice of its infirmity, who takes it up at maturity in discharge of his own debt to the holder or in consideration of his own note given therefor, may recover the contents thereof from the maker.

An innocent holder, in such case, is one, who has received the note before maturity for value, and without actual knowledge of its fraudulent inception.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit upon a promissory note. The defendant is the maker, and the plaintiff an accommodation indorser, who, after its dishonor, took up the note and brought suit to recover thereon. The note with the indorsements is as follows: "Boston, November 1, 1887. One year after date I promise to pay to the order of John S. Morse, three thousand dollars, value received.

Witness, Lucretia M. Lewis.                  Mary A. Lewis."

[Indorsements.] "Waiving demand and notice. October 24, 1888. John S. Morse. Waiving demand and notice. October 25, 1888. Joseph Breckenridge."

The case was tried in the Superior Court, for Cumberland county, and a verdict was returned for the plaintiff. The defendant took exceptions and filed a general motion for a new trial.

There was testimony offered by the plaintiff tending to show that the note in suit was given by the defendant to one John S. Morse, the payee named in said note, on the day before the defendant's departure for Europe, and in settlement of an account alleged to exist between the defendant and the said Morse. And there was testimony tending to show that no such account existed or was settled on that day, or at any other time, and that the note in suit was never given in settlement of any account, or for any valuable consideration. There was testimony offered to show that the defendant was the widow of George Lewis, who deceased in Portland, Maine, in 1883 ; that said Lewis left to the defendant and an only daughter, the sum of fifty thousand dollars ; that the defendant had very little business experience, and that said Morse acted for her in the investment of the funds of the estate with the plaintiff and one other party to the amount of about thirty-seven thousand five hundred dollars, thirty-three thousand dollars of which the plaintiff had received from time to time, and given his note and a mortgage of real estate therefor. That on two occasions more than a year before November 1, 1887, the defendant had occasion to go to Isle au Haut where she remained a part of the summer months ; that said Morse suggested to her the advisability of placing in his hands blank pieces of paper, signed by her and witnessed by her daughter, in order to enable said Morse to draw money from the savings bank, from time to time, to pay over to said Breckenridge as he should need it, and that accordingly the defendant placed in the hands of said Morse certain blank sheets of note paper signed by herself and witnessed by her daughter, which resembled in form the paper upon which the note in suit was written ; that she gave him no authority to use said blank sheets for any other purpose whatever, except to draw the money from the savings bank for the purpose of paying the same to the plaintiff. .The defendant testified that she never

gave the note in suit and never intentionally signed such note, and the daughter testified that she never witnessed any such note as the note in suit; both testified that the signatures resembled their signatures, but that they were never signed to any note whatsoever, or any note given in settlement of any account. The defendant further offered testimony to show that, just prior to her departure for Europe, she notified the plaintiff not to give Morse any money for any purpose or under any circumstances.

The plaintiff introduced testimony that Morse presented to him the note in suit in December, 1887, and requested him to get it discounted, upon the ground that he wanted to provide for drafts which the defendant might draw upon him while in Europe ; that the plaintiff took said note to the Maverick Bank and was told the time of payment was so long that the bank would not take the paper ; that he then took it a to note broker, who said that he was not sufficiently acquainted with the parties and declined to purchase ; that he then sent the note or a letter relating to it to Portland, Maine, and that he was unable to get it discounted there, and returned it to said Morse. That a short time afterwards, said Morse, and one Francis, to whom said Morse was indebted, came to the plaintiff with the note ; that Francis asked the plaintiff whether the signer was good and whether he was willing to indorse the note ; that thereupon the plaintiff wrote his name upon the back of the note, and that said Morse and Francis took the same away with them. That said Breckenridge received no compensation for signing the note, but simply signed for the accommodation of Morse, and in order that Francis would discount it for Morse. That Francis paid to Morse the sum covered by said note, less the indebtedness of Morse to Francis. That before said note became due it was deposited in the bank for collection, and said Morse and the plaintiff waived demand and notice thereon.

Morse testified that he indorsed the note before Breckenridge placed his name on the back of the same. About three months after the note became due, Breckenridge gave his note upon demand in place of the note in suit, and the note in suit was delivered to him by said Francis.

The defendant contended that the plaintiff was a mere accommodation guarantor upon said note; that he did not take the note for value, nor purchase or hold said note either as an indorser or holder for value before it became due, or in the regular course of business. That the signatures to said note were forged by said Morse, or that the body of the note was written over said signatures by said Morse without the knowledge, authority or consent of the defendant, and after she had left for Europe. That the plaintiff signed said note at the request of said Morse and Francis; and that under the facts shown by the testimony in the case, the plaintiff when he received the note, received it subject to all equities that would exist between the maker and said Morse. That if the jury should find that the note was wrongfully written over the signature of the defendant, witnessed by her daughter, it was a forgery and void in the hands of third persons, whether they received the same for value without notice, and in the regular course of business, or not. That if the jury found that the note was written over the signature of the defendant, witnessed by her daughter, upon a blank piece of paper, that was instrusted to him for the purpose of writing an order on the savings bank, as above stated, that they must further find that in so intrusting such blank signatures to said Morse, the defendant was guilty of negligence and that the plaintiff suffered thereby; and that this question was a question of fact for the jury.

The defendant requested the court to instruct the jury as follows; but the court refused except as appears in the opinion.

1. That if Morse filled in the blank paper bearing the signature of Mrs. Lewis witnessed by the daughter, given him by Mrs. Lewis to draw money from the savings bank, by inserting the body of the note in suit, without the knowledge and consent of Mrs. Lewis, and without fault on her part, then it would be void in the hands of the plaintiff in this case and he cannot recover.

2. That Breckenridge being an accommodation indorser, if he indorsed the note for the benefit of Morse, and not of the defendant in this case, and did not pay the note until three months after the note became due, then he was not a *bona fide*

holder for value before the maturity of the note, and the defense that the note was fraudulently obtained or was without consideration is open to the defendant in this case.

*F. V. Chase*, for plaintiff.

*Edward Avery and A. A. Strout*, for defendant.

The defendant not having made, signed or authorized the signing or making of a note, she did not and could not employ any one to issue a note ; nor at the time the defendant indorsed or took the note was Morse in her employment; but she had notified the plaintiff that Morse was no longer authorized to do for her anything that he had done ; that when the plaintiff indorsed the note Morse was not her agent nor her representative. This was one of her contentions of fact. She admitted that Morse had acted for her in the matter of the mortgages given by the plaintiff to her, and in collecting the interest, but before she left for Europe she says that the mortgages had been all made, and she arranged with the plaintiff to keep the accruing interest until her return, and not pay any money to Morse. The application of the rule stated by the court assumed the fact and concluded her from having it determined in advance. *Gibbs* v. *Lanabury*, 22 Mich. 479, 491 ; *Taylor* v. *Atchison*, 54 Ill. 196 ; *Walker* v. *Ebert*, 29 Wis. 194.

Not a case of alteration, a mere breach of trust, but of forgery. The case is not to be decided on the authority of that class of cases which deal with written signatures affixed to some form of a promissory contract, with an intent implied from the existing words, or, in fact, on the part of the signer to be bound in some form, and which intent is varied by a person to whom is intrusted the duty of perfecting the contract. As when a blank note is signed or indorsed. *Putnam* v. *Sullivan*, 4 Mass. 45 ; *Abbott* v. *Rose*, 62 Maine, 194. The reasoning in *Greenfield Bank* v. *Stowell*, 123 Mass. 196, and the authorities cited and examined, however, furnish a closer approximation to the true rule. *Whittemore* v. *Clark*, 125 Mass. 496 ; *Bank* v. *Burnes*, 129 Mass. 596 ; *Foster* v. *Mackinnon*, 4 L. R. (C. P.) 704.

Under the instructions given by the court, if the jury found, (*a*,) that the signatures had been affixed to a blank piece of paper for the purpose of having an order on the savings bank written over them and delivered to Morse ; (*b*,) and Morse, after having executed that commission, without using the blank, at any time, even after all employment on the part of the defendant had ceased, forged the note above the signature ; (*c*,) and the plaintiff, before maturity of the note thus forged, indorsed it, without notice of the forgery, the defendant would be liable to the plaintiff,— then under this ruling the jury was to take the act of signing as conclusive on the defendant, without considering the question of negligence on her part. This, we submit, is not the law. *Caulkins* v. *Whister*, 29 Iowa, 495 ; *Foster* v. *Mackinnon*, 4 L. R. (C. P.) 704 ; *Cline* v. *Guthrie*, 42 Ind. 227–236, and authorities cited ; *DeCamp* v. *Hamma*, 29 Ohio, 467 ; 34 Mich. 43 ; *Taylor* v. *Addison*, 54 Ill. 196 ; *Whitney* v. *Sugden*, 2 Lansing, 477 ; *Rousevelt* v. *Pease*, 45 Wis. 509 ; *Washington S. Bank* v. *Ecky*, 51 Mo. 274.

The true rule seems to be that, unless one is guilty of culpable carelessness or negligence in writing or issuing a signature, which is always a question for the jury, he cannot be held liable on any contract written over the signature. Cases *supra*. This question was not submitted to the jury.

HASKELL, J. The plaintiff indorsed the defendant's promissory note for the accommodation of one Morse, the payee, who then negotiated the same, and, when it fell due, the plaintiff paid it and now sues to recover the amount of the note from the defendant.

I. The signature of defendant to the note was claimed to be a forgery. The court ruled that, a defense.

II. The note was claimed to have been fraudulently written by the payee, Morse, over the defendant's name, signed on blank paper, to enable Morse to write an order on a savings bank, where defendant had funds, as the necessities of her business intrusted to Morse might require ; and the court ruled that contention no defense.

It is contended that defendant's negligence in the premises should have been submitted to the jury; but that was not necessary, inasmuch as the question of negligence, as matter of fact, need not be considered an element, required to charge the defendant under the facts of this case. The payee of the note,, Morse, was intrusted with defendant's name in blank, to draw funds necessary to meet the calls of her business, intrusted to the care of her agent, Morse. He was authorized to write an order above defendant's signature, but instead of so doing he wrote a promissory note, and obtained the amount of it from a stranger. He fraudulently used his apparent authority for his own gain instead of his principal's. His relation to his principal is the same as if he had procured the money on an order that he was authorized to write and then embezzled it. The defendant may be held under the plain rules of agency. By intrusting her signature to her agent for use, the defendant gave him an apparent authority to use it in the manner he did. The limited authority, only known to themselves, cannot be held to reach strangers, who neither knew, nor had means of knowing of that secret limitation. The note, when presented for discount, gave no suggestion of infirmity. The signature was genuine and, apparently, the payee, defendant's agent, who indorsed it, had authority to negotiate it. It was apparently the defendant's genuine promise, and she, by intrusting her name to her agent for commercial purposes, held him out as an agent with general powers in relation to it. She clothed him with apparent authority, and cannot now deny it to the loss of any person who innocently relied upon it. It is better that she bear the consequences of misplaced confidence, than that an equally innocent person shall suffer. She selected the agent, the plaintiff did not. The apparent authority of the agent makes his act her own, in this case, as effectually as if her authority had been real. That is the doctrine of *Young* v. *Grote*, 4 Bing. 253; and of *Putnam* v. *Sullivan*, 4 Mass. 45, cited with approval in *Wade* v. *Withington*, 1 Allen, 562; and in *Bank* v. *Stowell*, 123 Mass. 198–9, where all the cases, both English and American, are reviewed. See also *Redlon* v. *Churchill*, 73 Maine, 146.

The same doctrine is held in the *Earl of Sheffield's case*, 13 App. Cas. 333 (1888). The Earl authorized his agent to procure a loan for a limited amount, and transferred to him in blank certain stocks, and delivered to him certain bonds for the purpose. The agent procured the loan, and delivered the securities to a broker, who in turn pledged them for his entire indebtedness to certain banks. The Earl sought to redeem; but the banks (the broker being insolvent) refused him, relying upon their legal title to the securities. At the first trial, redemption was denied upon the ground that the agent was master of the stocks, and had actual authority to convey them. On appeal, it was held that the agent had not actual authority to dispose of the stocks as he pleased; that his actual authority was limited to the amount of the loan authorized, but that the banks became owners of the stocks and bonds, having acquired the legal title, without notice of infirmity, through an agent who apparently had full authority to give it. On final appeal, the Lords approved the doctrine of the Court of Appeals, that if the banks as purchasers of the stocks took the legal title from an agent having apparent authority to give it, without notice of his actual limited authority, such title would become absolute; but reversed the judgment of the Court of Appeals, for the reason that the banks had actual notice of the limited authority of the broker over the stocks, and allowed the Earl to redeem. See also *Colonial Bank* v. *Cady*, 15 App. Cas. 267.

It is the same doctrine held where the signature is placed to a blank instrument to be filled by the person intrusted with it, only the blank is a patent limitation of the agent's authority. He may fill the blank as may suit him best, and the principal will be held. The blank form carries with it an implied authority to complete it, but not to alter it. *Russell* v. *Langstaffe*, 2 Doug. 514; *Violett* v. *Patton*, 5 Cranch, 142; *Bank* v. *Neal*, 22 How. 96; *Bank* v. *Kimball*, 10 Cush. 373; *Angle* v. *Ins. Co.* 92 U. S. 330; *Abbott* v. *Rose*, 62 Maine, 194, approved in *Kellogg* v. *Curtis*, 65 Maine, 61.

III. It is denied that the plaintiff is a *bona fide* holder of the note, so that equitable defenses must be shut out. That

question was submitted to the jury under instructions, in substance :

*a.* If plaintiff wrote his name upon the note before maturity under the name of the payee and for his accommodation, without notice of any infirmity in the note, and paid the same in the hands of an innocent holder at maturity, he may recover of the defendant the contents of the note, even if the plaintiff paid the note partly by the discharge of his own debt to the holder, and partly by his own note given for the balance.

When the plaintiff indorsed the note for the accommodation of the payee, he became liable thereon, subject to mercantile usage, and held the same relation to the maker, as if he had discounted the note himself, instead of indorsing it. The payee received the money on the note from the holder, to whom the plaintiff became contingently liable for its payment ; and, when the plaintiff became absolutely liable to pay the note, and did pay it, the promise of the maker, negotiable in form, transferred by the payee's indorsement, ran to him ; and it could make no difference to the maker, by what means, or for what consideration, the plaintiff gained title to the note. He then held it with the same rights in regard to it, as if he had given the payee the money on the note, instead of an accommodation indorsement, that afterwards compelled the payment of money, or an equivalent agreed to between him and the holder, to whom it had been negotiated. *Green* v. *Jackson,* 15 Maine, 136 ; *Eaton* v. *McKown,* 34 Maine, 510 ; *Roberts* v. *Lane,* 64 Maine, 108 ; *Barker* v. *Parker,* 10 Gray, 339. "A pre-existing debt constitutes a valuable consideration in the transfer of negotiable paper." *Lee* v. *Kimball,* 45 Maine, 174 ; *Norton* v. *Waite,* 20 Maine, 175 ; *Holmes* v. *Smith,* 16 Maine, 177 ; *Swift* v. *Tyson,* 16 Pet. 1 ; *Blanchard* v. *Stevens,* 3 Cush. 162. By his indorsement, the plaintiff engaged that the note should be paid according to its tenor. He engaged that it was genuine, and the legal obligation that it purported to be, *Furgerson* v. *Staples,* 82 Maine, 159 ; and it would be absurd to say that, when he met his indorsement to the satisfaction of the holder,, he could not sue the maker.

*b.* It is a question of fact whether the plaintiff, when he took the note, had knowledge of its fraudulent origin. "Mere negligence on his part is not sufficient to show it; nor is it sufficient if the facts are simply enough to put a prudent man on his guard. It must appear that the plaintiff had knowledge of the fraudulent inception of the note."

Exception to this instruction is not pressed by briefs of counsel. It seems to be in accord with the rule laid down in *Farrell* v. *Lovett*, 68 Maine, 326, and approved in *Kellogg* v. *Curtis*, 69 Maine, 212. Applying this rule to the evidence, it cannot be said that the plaintiff had knowledge of the fraudulent inception of the note.

                              *Motion and exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER JJ., concurred.