Putnam, Circuit Judge.
In the view of the court, no statute, either of Maine or Massachusetts, affects this case. The statute of Maine applicable to certificates of stock provides that they may be transferred by indorsement and delivery, hut that transfers shall not be valid, “except between the parties thereto, until the same is so entered on the books of the corporation,” etc. The question under this statute applicable to this case is: Who are the “parties” with reference to whom the statute by exception declares this transfer valid? In other words, whose name shall be inserted in the blank transfer, under the circumstances of this case, to make it complete? When this is ascertained, the transfer becomes perfect in favor of the person so ascertained as against the other “party,” namely, F. M. Laughton, who indorsed the certificate in blank. So far as this case is concerned, there are no outstanding equities in strangers to be considered, and the statute has no controlling effect. Without a due consideration of this rule of construction of the Maine statute, Iron Co. v. Lissberger, 116 U. S. 8, 6 Sup. Ct. Rep. 241, could not have been decided as it was; because here the court held that the transfer was valid, under the particular circumstances, in favor of an unregistered transferee as against an attaching creditor of the stockholder of record. When read together, the following cases in the supreme court will be found to be entirely consistent with this conclusion, and to fully sustain it, namely: Baldwin v. Ely, 9 How. 580; Combs v. Hodge, 21 How. 397; Bank v. Lanier, 11 Wall. 369; Vermilye v. Express Co., 21 Wall. 138; Parsons v. Jackson, 99 U. S. 434; Cowdrey v. Vandenburg, 101 U. S. 572; Railway Co. v. Sprague, 103 U. S. 756, and Hammond v. Hastings, 134 U. S. 401, 404,10 Sup. Ct. Rep. 727.
Pub. St. Mass. c. 78, § 6, is apparently aimed only at stockjobbing, as is shown by the reference in Brown v. Phelps, 103 Mass. 313, to Stebbins v. Leowolf, 3 Cush. 137. Likewise the Massachusetts statute of 1884, c. 229, does not seem pertinent, whether it reaches certificates of stock of foreign corporations or not. Its only purpose appears to be to remove the necessity of the registration of transfers of stock certificates as against subsequent purchasers, and it does not touch the question of the effect of an unauthorized sale of a certificate indorsed in blank. Fiske v. Carr, 20 Me. 301, turned on the very peculiar language of the statute cited in it, which unqualifiedly provided that the stock should not pass from the proprietor until the transfer had been recorded. So far as the question at bar is concerned, that statute was essentially different from the present. The latter, by implication and uniform construction, makes an un *522 recorded transfer valid, not only as between the parties to it, but also as between all others having notice. Bank v. Cutler, 49 Me. 315, is the ordinary application of the present statute, and in no way touches the questions at bar. The court does not perceive that any other Maine decision cited bears on this case. On the whole, the court is satisfied that this suit is to be disposed of according to the general principles of jurisprudence, applicable to certificates of corporate stocks indorsed in blank.
The court is of the opinion that whatever took place personally between Robinson and Mrs. Lee was purely of a friendly character, in no sense allied to business transactions, entirely in good faith, and not to be held by the law to prejudice either. The counsel for Mrs. Lee bring forward the proposition that when one of two innocent persons must suffer from the fraud of a third, the loss must be borne by him whose negligence enabled the third person to commit the fraud; and they cite on this point Allen v. Railroad Co., 150 Mass. 200, 207, 22 N. E. Rep. 917. It can hardly be said that this is a rule of the common law; but, if it were, the practical application of it is not helped by the general terms in which it is expressed. The court is forced to the conclusion that it does not apply to relieve Mrs. Lee any more than it would an innocent purchaser for full value of jewelry stolen as the result of careless exposure by the owner. Mrs. Lee either purchased outright, or advanced money on a pledge of the certificate, or both; but the details of this are of no consequence, because, having advanced a valuable consideration in good faith, she stands in the courts of the United States the same in either view. Robinson was absent when the transaction took place; and, if he had been within reach, non constat that she would have inquired of him concerning the certificate, there being nothing on it to show that he had any interest in it. Indeed, there was no person of whom she could inquire, unless of Laughton, the indorser of the certificate. As he had parted with it long before, be could not have aided her. She had no means of protecting herself. Robinson, with reasonable care, could easily have protected all parties. If it were a mere question of balancing equities, or of throwing the loss on the innocent party, the court would have little difficulty, and it regrets that the result of the case must be contrary to what seems natural justice.
The evidence shows, and it is not disputed, that the certificate of stock was deposited by Robinson in a box in the Boston Safe-Deposit & Trust Company, under such circumstances that both Robinson and the broker of whom Mrs. Lee- purchased had access to it. The certificate, however, was not intrusted to the possession of the broker, either directly, indirectly, or impliedly; nor was he authorized to remove it from the box. His misdoing was not embezzlement or fraud, but' criminal larceny at common law. The condition of things was like that of two persons, lawyers or brokers, occupying the same office, with a common safe or vault, to which each has access, and in which each is accustomed to deposit his papers or securities. The general principle which the court must follow has been stated as late as April of the current year by Lord Herschell in Bank v. Simmons, [1892] App. Cas. 201, 215, as follows:
*523 “The general rule of the law is that, where a person has obtained the property of another from one who is dealing with it without the authority of the true owner, no title is acquired as against that owner, even though full value be given, and the property be taken in the belief that an unquestionable title thereto is being obtained, unless the person taking it can show that the true owner has so acted as to mislead him into the belief that the person dealing with the property had authority to do so. If this can be shown, a good title is acquired by personal estoppel against the true owner. There is an exception to the general rule, however, in the case of negotiable instruments.”
Consider first the exception in behalf of negotiable instruments. This does not extend to bills of lading indorsed in blank, certificates of stock indorsed in blank, bonds or scrip parable to bearer or indorsed in blank and overdue, nor to instances like those in Parsons v. Jackson, ubi swpra, and Baxendale v. Bennett, 3 Q. B. Div. 525, where the negotiable paper had been drawn and signed, but never issued. In the view of the court, the rule concerning certificates of stock. indorsed in blank is correctly stated in Daniel on Negotiable Instruments, (4th Ed.) §§ 1708, 1709. They have a certain quasi negotiability, arising largely, if not entirely, from the fact that the holder has voluntarily made delivery to some other person, and thus precluded himself by the general principles of estoppel; and more particularly by the fact that he has given an apparently unrestricted authority, which cannot be limited to the injury of others by undisclosed instructions. This latter proposition is the ordinary rule applicable to all agencies, and is thoroughly illustrated in Breckenridge v. Lewis, 84 Me. 349, 24 Atl. Rep. 864. In this case the defendant intrusted to a third person her signature in blank for a business purpose. It was used in violation of the undisclosed authority, and the court sustained the transaction. Certificates of stock indorsed in blank are so far of a negotiable character that they ordinarily pass from hand to hand, that they are not subject to lis pendens, and that, as stated by Daniel, in order to effectuate the ends of justice and the intention of the parties, the courts ordinarily decree a better title to the transferee than actually existed in the transferrer. Nevertheless, we do not find that any court of authority has ever gone so far as to hold that the holder of them may lose the title to such as maybe stolen from him, as he may of negotiable promissory notes, bills, scrip, or bonds, payable to bearer or indorsed in blank.
Touching the other proposition found in the foregoing citation from Bank v. Simmons, namely, that the purchaser shows that “the true owner has so acted as to mislead him into the belief that the person dealing with the property had authority to do so,” the rule is stated quite generally, but its application is limited. The court need not refer to the well-known cases in which a party stands by silently, and permits his property to.be disposed of without a protest. The contest at bar relates to the mere negligence of the original holder, and how far this may prevent him from reclaiming his property. At first it occurred to the court that, inasmuch as Robinson had seen fit to leave this certificate in such condition as to indicate that somebody was authorized to acquire it and fill in the indorsement, he was barred; but the court is unable to find *524 any authorities sustaining this suggestion, and is compelled to treat this certificate, indorsed in blank and stolen, as it would any other stolen property, aside from strictly negotiable securities. There has been at times a disposition to lay down broadly rules touching negligence in cases analogous to this. In Bank v. Stowed, 123 Mass. 196, these rules were largely discussed. The opinion pointed out that they apply only when there is some .special duty or confidential relation between the parties, as between a depositor and the bank; and it was held that the maker of a note was not liable for the increased amount by which it was raised, notwithstanding the careless manner in which he had drawn it. The same principle was also discussed in Baxendale v. Bennett, ubi supra; where it was held that, although the defendant had completed a blank acceptance, and left it in the drawer of his writing table, which was unlocked, from which it was stolen, and afterwards filled up and purchased by an innocent party, yet he was not liable thereon. In Abbott v. Rose, 62 Me. 194, 204, the broader rule was stated with favor, but it was not material to the case, and is not harmonious with the principles of the later decisions,—Breckenridge v. Lends, ubi supra, and other cases already cited. In ail the cases in any way pertinent relied on by the counsel of Mrs. Lee there was a voluntary intrusting of actual possession by the holder. On the whole, the court is unable to find any principle of the common law which will protect her; and the case at bar, though in equity, involves only common-law rights. Let there be a decree that the blank transfer on the certificate of stock in question in this case, deposited in the registry of the court, be filled up in favor of defendant Robinson, and that the plaintiff corporation issue him a new certificate in exchange therefor, and that complainants recover one half of their costs from defendant Robinson and one half from defendant Lee.