MECHANICS BANK OF THE CITY OF BROOKLYN, DEFENDANT IN ERROR, v. ANNIE N. CHARDAVOYNE, PLAINTIFF IN ERROR.

Submitted March 24, 1903—Decided July 20, 1903.

1. The M. Bank, of the city of Brooklyn, New York, received, at its banking-house, from C., in the regular course of business, in good faith, without notice of any infirmity in it, and in payment of an

indebtedness then due to the bank from C., a promissory note, which the wife of C. had endorsed in blank and entrusted to him for the purpose of having it discounted for her benefit. *Held*, that, by the *lex loci contractus*, the bank was a *bona fide* holder thereof *for value.*

2. One who endorses a promissory note in blank, and entrusts it to another to fill it up and have it discounted for his (the endorser's) benefit, is liable upon it to a *bona fide* holder for value, who receives it before maturity, in the usual course of business, from the person to whom it was entrusted, notwithstanding that the latter has filled it up for, and fraudulently converted it to, a purpose entirely different from that for which he was authorized to use it.

---

On writ of error to the Essex Circuit Court.

For the plaintiff in error, *Lambert & Stewart.*

For the defendant in error, *Albert C. Wall.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit was brought against William S. Chardavoyne and Annie N., his wife, upon a promissory note made by William to the order of Annie, and endorsed by her. The note is dated Newark, July 28th, 1899, and is payable at the Mechanics Bank, Brooklyn, New York. The case was tried by the court without a jury, by consent of the parties. The following are the pertinent facts found by the trial court: Mrs. Chardavoyne, about ten days or two weeks before July 28th, 1899, entrusted her husband with a blank form of promissory note, endorsed by her, to be filled up and signed by him, and used at the German National Bank of Newark, to obtain a loan for Mrs. Chardavoyne. The German National Bank refused to discount the note, and its refusal was reported to her. She never authorized her husband to use the note for any other purpose. Notwithstanding this fact, he, on the 28th day of July, took the blank note to the banking-house of the plaintiff company, in Brooklyn, New York, and the body of the instrument was then filled up by the plaintiff's president, at the request of Mr. Chardavoyne, for a sum equal to the amount of an indebtedness due from

Mr. Chardavoyne to the plaintiff. The next day the note was discounted by the plaintiff, and the proceeds placed to Mr. Chardavoyne's credit. The president of the bank, when he filled up the note, was ignorant of the fact that it had been endorsed in blank by Mrs. Chardavoyne, and the plaintiff took it, in the regular course of business, in good faith, without notice of any infirmity in it, and *in payment* of the indebtedness then due to it from Mr. Chardavoyne. On this finding of facts judgment was entered for the plaintiff against both the maker and endorser of the note. The writ of error is sued out by the endorser, Mrs. Chardavoyne, alone.

The principal ground upon which we are asked to reverse this judgment is that, upon the facts found, no liability on the part of Mrs. Chardavoyne can be predicated. The contention is that her husband had no authority to fill up the note, except for the purpose of having it discounted at the German National Bank for her benefit; that when this purpose failed her husband's agency ceased, and her endorsement became a nullity, and that his subsequent fraudulent act in having the blanks in the note filled up, and then appropriating it to the payment of his own indebtedness, did not render her responsible thereon as endorser.

An examination of the authorities, however, will disclose that this contention is untenable. The question to be determined in a case like the present is not what is the *actual* limit of authority conferred by the endorser of a blank note upon the person into whose hands she delivers it, but rather, what authority such an endorser, by her conduct, holds out that person as possessing, to one who takes the note in good faith, for value, and without notice that the actual authority conferred is a limited one only; and therefore, as is stated by Mr. Parsons (1 *Pars. Bills & N.* 110), "it is no defence against a *bona fide* holder, for value, to prove either that the person to whom the instrument was entrusted in blank had no authority at all to fill the blank; or that his authority was limited to a certain sum which he had exceeded; or that he was only authorized to use the paper for a particular purpose, and had fraudulently converted it to a different purpose; or

that he was only authorized to fill the blank upon a certain condition, which had not happened; or that the authority was limited in point of time, and that the time had expired." Practically the same statement appears in 1 *Dan. Neg. Inst.*, § 143, where it is said that "the authority implied by a signature in blank, and the credit granted, are so extensive that the party so signing will be bound, though the holder was only authorized to use it for one purpose, and has perverted it to another; and though the authority was limited to a time which has expired, or was only to be exercised upon a condition which has not happened."

The decided cases fully support the rule laid down by these authors.

As early as 1780, Lord Mansfield, in *Russel* v. *Langstaffe, Doug.* 514, declared that "the endorsement on a blank note is a letter of credit for an indefinite amount. By it the endorser says: 'trust G. (the person who received the note from the endorser) to any amount, and I will be his security.' It does not lie in his mouth to say that the endorsement is not regular."

In *Gerrard* v. *Lewis, L. R.,* 10 *Q. B. Div.* 30, it was held that "a man who gives his acceptance (to a bill of exchange) in blank, holds out the person to whom it is entrusted as clothed with ostensible authority to fill in the bill as he pleases."

In *Bank of Pittsburg* v. *Neal,* 63 *U. S.* 96, it was held that "where a party to a negotiable instrument entrusts it to the custody of another, with blanks not filled up, whether it be for the purpose to accommodate the person to whom it was entrusted, or to be used for his own benefit, such negotiable instrument carries on its face an implied authority to fill up the blanks and perfect the instrument," and that "a *bona fide* holder of such an instrument, for valuable consideration, without notice of the facts which impeach its validity between the antecedent parties, if he takes it before the same becomes due, holds the title unaffected by these facts, and may recover thereon."

In *Michigan Bank* v. *Eldred,* 76 *U. S.* 544, it is declared

to be "well settled law that where a party to a negotiable bill of exchange or promissory note, containing blanks, entrusts it to the custody of another, whether it be for the purpose of accommodating the person to whom it was entrusted or to be used to raise money for his own benefit, such bill or note, *especially if it be endorsed in blank,* carries on its face an implied authority in the person to whom it is so entrusted to fill up the blanks in his discretion; and as between such party to the bill or note, and innocent third parties holding the bill or note as transferees for value, in the usual course of business, the person to whom it is so entrusted must be deemed to be the agent of the party who committed such bill or note to his custody; and the legal conclusion is that he acted under the authority of that party, and with his approbation and consent."

In *Van Duzer* v. *Howe,* 21 *N. Y.* 531, it was decided that "a party who entrusts another with his acceptance in blank is responsible to a *bona fide* holder, although the blank is filled with a sum exceeding that fixed as a limit by the acceptor."

In *Redlich* v. *Doll,* 54 *N. Y.* 235, the rule is stated to be that "if a note be obtained from a maker by fraud; if it be made for one purpose and used by the holder for another; if it be delivered in blank, with an agreement that the blank shall be filled in one way, and it be filled in another; in all these cases the maker is liable to a *bona fide* holder for value. The maker, rather than the innocent holder, must suffer for his negligence or misplaced confidence."

In *Putnam* v. *Sullivan,* 4 *Mass.* 45, it was held that "where a merchant entrusts his clerk with his blank endorsements, and one by false pretences obtains and uses them (by writing and signing promissory notes upon the face of the blanks) such fraudulent use of them will not discharge the endorser against an innocent endorsee."

In *Greenfield Bank* v. *Stowell,* 123 *Mass.* 196, the rule is laid down that "if a man endorses a blank form of note, and delivers it with the intention that the blank should be filled, he thereby makes the person to whom he delivers it his agent,

and is responsible for whatever date, sum or time of payment he may insert, to a *bona fide* endorsee."

In *Breckenridge* v. *Lewis,* 84 *Me.* 349, it was decided that "one who entrusts his signature to another for commercial use—that is, to have some business obligation written over it, becomes holden upon a negotiable promissory note fraudulently so written by the person so entrusted with it, and negotiated to an innocent holder."

It is unnecessary to multiply authorities. Enough have been cited to make it clear that one who endorses a promissory note in blank and entrusts it to another to fill it up and have it discounted for his (the endorser's) benefit, is liable upon it to a *bona fide* holder for value, who receives it before maturity, in the usual course of business, from the person to whom it was entrusted, notwithstanding that the latter has filled it up for, and fraudulently converted it to, a purpose entirely different from that for which he was authorized to use it. Commercial paper is a part of the mercantile currency of the country, and in order that its free circulation may not be impeded, it is the settled policy of the law that innocent holders thereof, for value, should have a right to enforce payment of such paper against those who, by signing or endorsing it, either in blank or otherwise, have caused it to become a part of such currency.

It is further contended on behalf of the plaintiff in error that if it be considered that the endorser of a blank promissory note is liable to a *bona fide* holder, for value, under the circumstances existing in the present case, still the plaintiff bank is not entitled to recover against her, because it does not occupy that position. The fact is established by the finding of the trial court, as has already been stated, that the plaintiff bank took the note "in the regular course of business, in good faith, without notice of any infirmity in it." It is, therefore, a *bona fide* holder. The trial court further found that the bank took the note "*in payment* of an indebtedness then due" to it. So far as this state is concerned, the rule is entirely settled that a party taking a promissory note in payment of an antecedent debt is a holder of such note for a valuable

consideration, and entitled to protection as such. *Allaire* v. *Hartshorne,* 1 *Zab.* 665; *Duncan Sherman & Co.* v. *Gilbert,* 5 *Dutcher* 521. But, as the transaction out of which the plaintiff's right sprang took place in New York, the question to be determined is whether, by the law of that jurisdiction, one who so takes a promissory note is a holder for value. The plaintiff in error insists that the rule established in that state is that where the holder has received the paper as payment for an antecedent debt he is not such a holder, and refers us to a declaration to that effect contained in the opinion of this court in *Duncan Sherman & Co.* v. *Gilbert, supra* (at *p.* 528). No authority for this statement is cited in the opinion referred to, and an examination of the New York cases do not justify it.

On the contrary, the New York decisions on this subject, so far as we have been able to ascertain by an examination of the published reports of such decisions, are in entire harmony with our own. In 1840, more than twenty years prior to the decision in Duncan Sherman & Co. *v.* Gilbert, the Supreme Court of New York, in the case of *Bank of St. Albans* v. *Gilliland,* 23 *Wend.* 311, held that "receiving a note for a precedent debt is receiving it *for value,* within the law merchant, if it be taken *in satisfaction* of such precedent debt, and the indebtedness be canceled." To the same effect is the decision of the Court of Appeals in *Brown's Executor* v. *Leavitt.* 31 *N. Y.* 113, and in the later cases of *Phœnix Insurance Co.* v. *Church,* 81 *Id.* 218, and *Mayer* v. *Heidelbach,* 123 *Id.* 332.

It is further urged on behalf of the plaintiff in error that as she received nothing for her endorsement, she is, at most, an accommodation endorser, and that section 5 of our Married Women's act (*Gen. Stat., p.* 2017) exempts her from liability on such a contract. In disposing of this contention it is enough to say that it has already been decided by this court that where a note, upon which a married woman puts her name, in this state, first comes into legal existence in the State of New York (as was the present case), the statutory provision appealed to affords her no protection. *Thompson* v. *Taylor,* 37 *Vroom* 253.

The only other ground upon which the validity of the judgment below is attacked, is based upon the claim set up by the plaintiff in error at the trial of the cause, that at the time of the transaction between her husband and the bank the former was insane, the contention being that the court erred in its holding with regard to the measure of liability upon contracts made by insane persons. It is quite immaterial, however, whether such error occurred or not. The trial court found as a fact that the husband of the plaintiff in error was not insane at the time when he delivered the note in suit to the plaintiff; and, as the testimony produced on the subject of Chardavoyne's sanity was amply sufficient to support this finding, it must be accepted by this court. Consequently, the question of the measure of liability, under the conditions mentioned, is not involved in the decision of the case.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 9.

*For reversal*—DIXON, GARRISON, FORT, GREEN. 4.